101 Cal.Rptr.2d 135 (2000)
84 Cal.App.4th 641
The PEOPLE, Plaintiff and Respondent,
v.
Joshua HARVEST, Defendant and Appellant.
No. A087494.
Court of Appeal, First District, Division Four.
October 31, 2000.
Review Denied February 28, 2001.[*]
*136 Scott A. Sugarman, San Francisco, under appointment by the Court of Appeal, Attorney for Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Senior Assistant Attorney General, Ronald E. Niver, Supervising Deputy Attorney General, Karl S. Mayer, Deputy Attorney General, Attorneys for Respondent.
HANLON, P.J.
In People v. Hanson (2000) 23 Cal.4th 355, 97 Cal.Rptr.2d 58, 1 P.3d 650, our Supreme Court held that the double jeopardy provisions of the California Constitution prohibited a trial court from increasing a statutorily-mandated restitution fine following retrial after appeal. The issue presented here is whether the same result applies to direct restitution to victims of crime. We conclude that court-ordered *137 victim restitution imposed for the first time at a resentencing following appeal is not punishment and is therefore not constitutionally barred.

BACKGROUND
Defendant Joshua Harvest was convicted of the first-degree murder of Joel Vigil and the second-degree murder of Michael Gialouris. The jury found true a multiple murder special circumstance allegation. There was no provision for victim restitution made at his sentencing because the court reserved the issue. On defendant's appeal, this court affirmed the first degree murder conviction; the second degree murder conviction and the special circumstance finding were reversed, and the prosecution was given the choice between a retrial or consenting to a reduction of the charge to voluntary manslaughter. (People v. Harvest (June 5, 1998, A068802) [nonpub. opn.].)
After the prosecution elected not to retry defendant for second degree murder, the trial court set a date for resentencing. In addition to the standard sentencing statement, the prosecution also submitted a memorandum of points and authorities "in support of restitution" to the Vigil and Gialouris families. Defendant made a number of written objections to ordering restitution at resentencing. He believed the prosecution's "request for restitution" was untimely and exceeded the scope of the remand from this court. He urged that the prosecution was estopped to seek restitution at this time, not having done so at the first sentencing. Finally, he argued that any order for restitution would constitute double jeopardy under the California Constitution.
At the sentencing hearing the trial court overruled defendant's jurisdictional objections and ordered defendant to make restitution as follows: (1) $7,641 to Vigil's parents for funeral and burial expenses; (2) $5,500 to Gialouris's mother for funeral and burial expenses; and (3) $23,160 to Vigil's former wife for child support. The court denied additional claims by Vigil's parents for property damage, legal expenses for a civil suit against defendant, and the loss of anticipated income Vigil might have provided. It sentenced defendant to 11 years for the manslaughter of Gialouris and a consecutive term of 25 years to life for the murder of Vigil. Defendant thereafter filed a timely notice of appeal.

REVIEW

I
"Persons may not twice be put in jeopardy" (Cal. Const., art. I, § 15; see id., § 24). Defendant invoked this principle in the trial court and renews it here, arguing that it must prevail in light of People v. Hanson, supra, 23 Cal.4th 355, 97 Cal. Rptr.2d 58, 1 P.3d 650.
The doctrinal basis of Hanson, initially developed in the context of capital sentencing and subsequently extended, is that a defendant should not face increased punishment for having successfully appealed the initial conviction. (See People v. Hanson, supra, 23 Cal.4th 355, 358-360, 97 Cal.Rptr.2d 58, 1 P.3d 650 and decisions cited.) As the Supreme Court framed the principle in an earlier decision, "a defendant should not be required to risk being given greater punishment on a retrial for the privilege of exercising his right to appeal." (People v. Ali (1967) 66 Cal.2d 277, 281, 57 Cal.Rptr. 348, 424 P.2d 932.)
The Hanson Court then considered whether, as a matter of statutory construction, the Legislature intended restitution fines to constitute punishment. Its analysis, with copious references to the Penal Code, proceeded as follows: "To begin, restitution fines are imposed only upon conviction of a criminal offense. (See § 1202.4, subd. (a).) Although originally enacted as part of the Government Code, the operative statute is now contained in the Penal Code (§ 1202.4 ...), which expressly denominates `fines' as `punishments.' *138 (§ 15; see §§ 17, subd. (b), 18, 19, 19.6, 19.8....) Section 1202.4, subdivision (a)(3), provides that restitution fines are distinct from restitution orders and are `in addition to any other penalty....' [Citation.] [¶] Several other features of the statute compare with the imposition of criminal punishment generally. Except for `compelling and extraordinary reasons,' which the trial court must state on the record (§ 1202.4, subd. (c)), a restitution fine is mandatory even in the absence of a crime victim (§ 1202.4, subd. (a)(3)(A)) and must be made a condition of probation, if granted (§ 1202.4, subd. (m)). As with other types of fines, the money is deposited into the state treasury; it is earmarked for the Restitution Fund, which enables the state to compensate victims of crimes. (§ 1202.4, subd. (e)....) The amount varies in the trial court's discretionranging from a minimum of $200 to a maximum of $10,000 (§ 1202.4, subd. (b)(1))and may be calculated by multiplying $200 by the years of imprisonment imposed and then multiplying by the number of counts. (§ 1202.4, subd. (b)(2).) In addition, the court `shall consider any relevant factors including ... the seriousness and gravity of the offense and the circumstances of its commission, ... and the number of victims involved in the crime.' (§ 1202.4, subd. (d).) 'A defendant's inability to pay shall not be considered a compelling and extraordinary reason not to impose a restitution fine.' (§ 1202.4, subd. (c).)" (People v. Hanson, supra, 23 Cal.4th 355, 361-362, 97 Cal. Rptr.2d 58, 1 P.3d 650.) The Court's conclusion was that "the Legislature intended restitution fines as a criminal penalty rather than as a civil remedy." (Id. at p. 362, 97 Cal.Rptr.2d 58, 1 P.3d 650.)
Using this analysis as a template, we conclude that victim restitution (what the Hanson Court termed "restitution orders") is qualitatively different from a restitution fine. It is true that both forms of restitution share an identical statutory basis. (Former Gov.Code, § 13967; Pen. Code, § 1202.4.) But whereas "restitution fines are imposed only upon conviction of a criminal offense" (People v. Hanson, supra, 23 Cal.4th 355, 361, 97 Cal.Rptr.2d 58, 1 P.3d 650), victim restitution is a civil remedy which does not require a criminal forum. (E.g., Rest., Restitution (1937) §§ 4-5; Dinosaur Development, Inc. v. White (1989) 216 Cal.App.3d 1310, 1314-1315, 265 Cal.Rptr. 525.) The governing statutes specify that an order for victim restitution may originate from criminal court, but expressly recognize that such an order "shall be enforceable as a civil judgment." (Former Gov.Code, § 13967, subd. (c); Pen.Code, § 1202.4, subds. (a)(3)(B) & (i).) It therefore contemplates that subsequent enforcement efforts may occur outside the context of the criminal law. (See Pen.Code, § 1202.4, subd. (h).) Moreover, unlike a fine, victim restitution is not expressly and statutorily defined as punishment.
"[A] restitution fine is mandatory even in the absence of a crime victim" (People v. Hanson, supra, 23 Cal.4th 355, 362, 97 Cal.Rptr.2d 58, 1 P.3d 650), but victim restitution obviously requires a victim. If there is no victim, or no survivors of a victim, there can be no restitution order. Unlike a restitution fine, victim restitution is therefore not an inevitable product of a criminal sentencing. All restitution fines go to the state (ibid.), but victim restitution orders shall be paid "to the victim." (Former Gov.Code, § 13967, subd. (c); Pen.Code, § 1202.4, subd. (f).) The restitution fine is limited to a maximum of $10,000 (former Gov.Code, § 13967, subd. (a); Pen.Code, § 1202.4, subd. (b)(1)), but there is no limit for a victim restitution order. The statutory command is that "full restitution" is to be ordered for a victim in "a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of the defendant's criminal conduct." (Former Gov.Code, § 13967, subd. (c); Pen.Code, § 1202.4, subds. (f)(3) & (g).) Victims have "a right to restitution based on the *139 full amount of their losses, without regard to full or partial recoupments from other sources, except the Restitution Fund." (People v. Birkett (1999) 21 Cal.4th 226, 229, 87 Cal.Rptr.2d 205, 980 P.2d 912; see Pen.Code, § 1202.4, subd. (f)(2).) Victim restitution has been ordered in excess of a million dollars, more than 100 times the maximum restitution fine possible. (People v. Draut (1999) 73 Cal.App.4th 577, 86 Cal.Rptr.2d 469.)
In fixing the amount of a restitution fine a sentencing court may consider "the seriousness and gravity of the offense and the circumstances of its commission," as well "psychological harm caused by the crime." (Former Gov.Code, § 13967, subd. (a); Pen.Code, § 1202.4, subd. (d).) A restitution order, however, is confined to "economic loss" suffered by a victim. (Former Gov.Code, § 13967, subd. (c); Pen.Code, § 1202.4, subd. (f).) Unlike a fine, the sentencing court is not provided with a statutory formula for computing victim restitution that allows for the length of the defendant's imprisonment or "the number of felony counts of which the defendant is convicted." (Pen.Code, § 1202.4, subd. (b)(2).) This language immediately suggests the calculus of actual sentencing choices. (See Pen.Code, § 1170.1; Cal. Rules of Court, rules 414, 421, 425.)
The purposes of the criminal law are protecting society, deterring future criminality, and punishing criminality already committed. (E.g., Pen.Code, § 1170, subd. (a)(1); People v. Roberts (1992) 2 Cal.4th 271, 316, 6 Cal.Rptr.2d 276, 826 P.2d 274; People v. Camodeca (1959) 52 Cal.2d 142, 147, 338 P.2d 903; People v. Friend (1957) 47 Cal.2d 749, 766-767, fn. 8, 306 P.2d 463.) Although restitution has an element of deterrence (see People v. Hanson, supra, 23 Cal.4th 355, 362, 97 Cal.Rptr.2d 58, 1 P.3d 650), the primary purpose of victim restitution is to provide monetary compensation to an individual injured by crime. (See Cal. Const., art. I, § 28, subd. (b) ["all persons who suffer losses as a result of criminal activity shall have the right to restitution ... for losses they suffer"]; former Gov.Code, § 13967, subd. (c); Pen.Code, § 1202.4, subds. (f)(3) & (g); People v. Broussard (1993) 5 Cal.4th 1067, 22 Cal.Rptr.2d 278, 856 P.2d 1134.) Compensation is the defining feature of civil law. (E.g., Civ.Code, §§ 3300, 3333 [measure of damages for breach of contract or tort is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby"].) Post-criminal proceedings vindicating the remedial purpose of reimbursement have long been treated as not constituting punishment for double jeopardy purposes. (E.g., Helvering v. Mitchell (1938) 303 U.S. 391, 398-405, 58 S.Ct. 630, 82 L.Ed. 917 [defendant acquitted of criminal tax evasion subsequently found liable in civil action for tax deficiency]; United States ex rel. Marcus v. Hess (1943) 317 U.S. 537, 548-552, 63 S.Ct. 379, 87 L.Ed. 443 [defendants convicted of defrauding government subsequently found liable in qui tam action for civil penalties, damages, and costs]; Rex Trailer Co. v. United States (1956) 350 U.S. 148, 151-154, 76 S.Ct. 219, 100 L.Ed. 149 [defendants convicted of fraudulently obtaining five war surplus trucks subsequently found liable for civil penalty of $2,000 for each truck]; United States v. Ursery (1996) 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 [defendants convicted of drug-related offenses subsequently liable for in rem forfeiture].)[1]
The circumstances in which victim restitution is ordered are not co-extensive with those in which a restitution fine is ordered. The recipients are not the same. The scope of a restitution fine is far different from a victim restitution order. A fine *140 may take account of more diverse factors, but it cannot exceed $10,000. On the other hand victim restitution is limited to economic loss but is unlimited in the amount that can be ordered. The collection procedures for a restitution order are clearly meant to be civil. (See Pen.Code, § 1202.4, subd. (h); cf. Helvering v. Mitchell, supra, 303 U.S. 391, 402, 58 S.Ct. 630, 82 L.Ed. 917 ["Civil procedure is incompatible with the accepted rules and constitutional guaranties governing the trial of criminal prosecutions, and where civil procedure is prescribed for the enforcement of remedial sanctions, those rules and guaranties do not apply"].) Most importantly, the purposes and objectives of each are not the same. We conclude from the language of the governing statutes that the Legislature intended victim restitution as a civil remedy rather than as a criminal punishment.
However, as the Hanson court pointed out, this determination does not end the appropriate analysis: "An initial determination that the legislature did not intend to impose a criminal sanction does not end the inquiry, however, since a statutory scheme may be `"so punitive either in purpose or effect" [citation] as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." [citation.]'" (People v. Hanson, supra, 23 Cal.4th 355, 361, 97 Cal.Rptr.2d 58, 1 P.3d 650, quoting Hudson v. United States (1997) 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450.)
"In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) `[w]hether the sanction involves an affirmative disability or restraint'; (2) "whether it has historically been regarded as a punishment'; (3) 'whether it comes into play only on a finding of scienter'; (4) "whether its operation will promote th traditional aims of punishment-retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) `whether it appears excessive in relation to the alternative purpose assigned.' It is important to note, however, that `these factors must be considered in relation to the statute on its face,' [citation], and `only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (Hudson v. United States, supra, 522 U.S. 93, 99-100, 118 S.Ct. 488,139 L.Ed.2d 450.)
In light of the previous statutory examination, this second-stage inquiry will not be extensive. The purpose of victim restitution is compensation, which does not involve an affirmative disability or restraint, and which has not historically been regarded as punishment. Victim restitution can, when developed in the context of a criminal sentencing, come into play only on a finding of scienter, but it does not necessarily require suchthere is no barrier to the victim obtaining essentially the same relief, a civil judgment for money, outside the criminal process. The restitution statutes make no mention of scienter, and are separate from provisions specifying punishment for substantive offenses. (See United States v. Ward (1980) 448 U.S. 242, 249-250, 100 S.Ct. 2636, 65 L.Ed.2d 742; id. at p. 256, 100 S.Ct. 2636 (cone, opn. of Blackmun, J.).) Victim restitution does have an element of deterrence, but it is far less important than the goal and alternative purpose of providing compensation to a victim of crime. (See Hudson v. United States, supra, 522 U.S. 93, 105, 118 S.Ct. 488, 139 L.Ed.2d 450.) Because restitution is limited to actual and demonstrated economic loss, it can hardly be condemned as excessive to the stated purpose of compensation. (See Department of Revenue of Montana v. Kurth Ranch (1994) 511 U.S. 767, 777, 114 S.Ct. 1937, 128 L.Ed.2d 767.) Moreover, when these factors are considered in conjunction with the plain statutory language, there is nothing *141 like "the clearest proof need to override the Legislature's patent intent that victim restitution is a civil remedy and not a criminal penalty. (Hudson v. United States, supra, at p. 100, 118 S.Ct. 488.)[2]
We conclude that victim restitution does not constitute punishment for double jeopardy purposes. In light of this conclusion, there was no constitutional impediment to the restitution order made at defendant's resentencing.

II
Defendant makes a number of nonconstitutional objections to the restitution order. We address each in turn.

(A)
The disposition ordered on the first appeal read as follows: "Defendant's conviction of first degree murder for the killing of Joel Vigil is affirmed. Defendant's conviction of second degree murder for the killing of Michael Gialouris and the multiple murder special circumstance finding are reversed with directions as follows: If the People do not bring defendant to trial within 60 days after the filing of the remittitur in the superior court (or, if the defendant waives time, within the resulting time limit), or if the People elect, in a writing filed in the trial court, not to retry defendant, the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of voluntary manslaughter ( [Pen.Code] § 192, subd. (a)) and shall resentence defendant accordingly." Defendant argues that the restitution order was "unlawful" because it was in excess of the trial court's limited jurisdiction pursuant to our remand. This is too narrow a view of the remand.
All that was left intact by our previous decision was the first-degree murder conviction. Following our remand, there could have been a second trial for murder, this time limited to whether defendant had committed second degree murder with the death of Michael Gialouris. The multiple murder special circumstance finding might have been restored, although this possibility was not expressly mentioned in our disposition. Regardless of how these matters were handled, defendant's resentencing would obviously require a recomputation of his custody and conduct credits. This was not mentioned in our disposition, but we hardly think defendant will insist his logic makes that portion of the resentencing jurisdictionally defective. If pretty much all of the particulars of sentencing could be revisited by the trial court following our remand, there is no reason why the issue of restitution should be placed off limits, particularly in view of the fact that the trial court had expressly reserved jurisdiction on this issue.

(B)
As previously mentioned, the trial court reserved the issue of victim restitution at the time it initially sentenced defendant. Just precisely what happened thereafter is somewhat unclear. It appears that Gialouris's relatives contacted authorities about a claim for $5,500. The prosecutor advised the Vigil family about the procedures for presenting a restitution claim. The trial court scheduled a "pre-trial conference" on the matter. For reasons that are not explicit, no more was heard of the matter until defendant's resentencing pursuant to our remand. Defendant contends these circumstances establish that the request for restitution made at his resentencing was untimely and ought not to have been acted upon according to "legal doctrines of waiver, estoppel, and laches." We see no merit in this contention for a number of reasons.
*142 First, as the trial court noted, there is no express statute of limitation on the matter of victim restitution. Second, the fact that the issue was reserved at the initial hearingand never protested by defendantput him on notice that the matter was not closed. Third, although estoppel may be invoked against the government, it will not be upheld if it will defeat a strong public policy (e.g., City of Long Beach v. Mansell (1970) 3 Cal.3d 462, 493, 91 Cal.Rptr. 23, 476 P.2d 423), and the constitutional mandate for victim restitution (Cal. Const., art. I, § 28, subd. (b)) qualifies as such. Fourth, there appears to be no equitable ground for finding estoppel against the government, which will inure to the disadvantage of persons who are not associated with the government. Fifth, as to waiver, the point made by the prosecutor at resentencing that "we, the People, legally cannot waive restitution on behalf of the victims" appears irrefutable. Sixth, there is some basis for believing that the Vigil family was never actually advised of their right to appear at the "pre-trial conference" following defendant's initial sentencing hearing. Seventh, "[l]aches can be asserted only in a suit in equity" (11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 14, p. 691), which the resentencing clearly was not. Eighth, there is nothing in defendant's situation that suggests the disadvantageous change of position required for estoppel. (City of Long Beach v. Mansell, supra, at p. 488, 91 Cal.Rptr. 23, 476 P.2d 423.)
The totality of these factors convinces us that defendant's objections lack the force to overturn the restitution order on these grounds.

(C)
Defendant does not contest the restitution ordered for the Vigil family's burial expenses, but he does argue that the other two components of the restitution order lack "an adequate factual basis for the amount of restitution ordered."
With respect to the restitution for child support, the relevant portions of the trial court's written ruling of July 23, 1999, read as follows: "Chiarlene Rae Vigil, Joel Vigil's former wife, on behalf of their daughter, has filed a restitution claim for $62,798.40 for the loss of child support Joel Vigil had been ordered to provide. The Court takes judicial notice of domestic docket D92-01019 wherein a stipulated order dated December 5, 1991 recites that the decedent, Joel Vigil, is the father of Melissa Lorraine Vigil, born July 23, 1986: the order further recites that defendant shall pay current child support at the rate of $386.00 per month beginning December 1, 1991.... Persons legally dependant [sic ] for support upon a person who sustains death as a direct result of a crime, are victims for the purposes of § 13967(c) of the [Government [C]ode. [Citation.] The death of Mr. Vigil directly deprived the minor of this support. Since the judgment for restitution must be calculable as of the date of the order, the. Court will fix the loss at $386.00 per month, accrueing [sic ], for restitution purposes, with the commencement of July, 1994 to the month of July, 1999, or 60 months, to a total of $23,160.00. . . . Current restitution on this portion of the claim is, therefore, fixed at $23,160.00."
A trial court is required to use "a rational method" in computing restitution. [People v. Draut, supra, 73 Cal.App.4th 577, 582, 86 Gal.Rptr.2d 469; People v. Thygesen (1999) 69 Cal.App.4th 988, 992, 81 Cal.Rptr.2d 886.) The trial court's method is restrained, based on previous judicial computations, and is eminently logical. Moreover, it was defendant who suggested that "the appropriate approach ... is to take the judicial notice approach" of the existing child support order. Any resulting error would qualify as invited. [E.g., People v. Whitt (1990) 51 Cal.3d 620, 339-640, 274 Cal.Rptr. 252, 798 P.2d 849; 6 Witkin & Epstein, Cal.Criminal Law (2d ed.1989) § 3287, p. 4063.) As for defendant's argument that the award was predicated *143 on the speculative assumption that Joel Vigil's financial status would not change, all that need be said is that this speculation was necessitated by defendant's murder of Mr. Vigil. (See People v. Abraham (1986) 185 Cal.App.3d 1221, 1229, 230 Cal.Rptr. 325.)
Defendant's claim concerning the $5,500 awarded to Michael Gialouris's mother for burial expenses must be sustained. The Vigil family could support their claim with documentation and stood ready to testify, but the Gialouris claim had neither of these supports. There was mention of the Gialouris claim in the probation officer's report, which may satisfy notice requirements for due process (e.g., People v. Blankenship (1989) 213 Cal. App.3d 992, 996-998, 262 Cal.Rptr. 141), but it cannot take the place of evidence. (See People v. Thygesen, supra, 69 Cal. App.4th 988, 995-996, 81 Cal.Rptr.2d 886.)

DISPOSITION
That portion of the restitution order allowing the claim of $5,500 is reversed. The judgment of conviction and the restitution order are affirmed in all other respects.
REARDON, J., concurs.
POCHÉ, J.[*]
I respectfully dissent. In my view the legislative genesis of restitution fines and victim restitution does not permit the conclusion reached by the majority, to wit: that the Legislature expressly or impliedly indicated a preference that victim restitution is a civil punishment. Nor can I subscribe to the view that the statutory scheme is not so punitive in purpose and effect that, whatever indication the punishment may have been intended as civil, it operates as a criminal penalty. (People v. Hanson (2000) 23 Cal.4th 355, 361, 97 Cal. Rptr.2d 58, 1 P.3d 650.)
The appropriate analysis as set out by our Supreme Court is to look first to the Legislature's characterization of the punishment. (People v. Hanson, supra, 23 Cal.4th at p. 361, 97 Cal.Rptr.2d 58, 1 P.3d 650; Hudson v. United States (1997) 522 U.S. 93, 99-100, 118 S.Ct. 488, 139 L.Ed.2d 450.) As the Hanson court noted the provisions for both types of restitution are now encompassed in Penal Code section 1202.4 having been moved there in 1994 from the Government Code. (Stats.1994, ch. 1106, § 3, No. 9 Deering's Adv. Legis. Service, pp. 6313-6314.) Although victim restitution was first imposed on this defendant only by an order of July 1999, the court applied the version of the statute, then Government Code section 13967[1] *144 which was in effect in the summer of 1993 when defendant committed his crimes.
The Legislature's intent underlying the restitution scheme, as made express in 1994, is that "all persons who suffer losses as a result of criminal activity" shall receive restitution for their losses. (Stats. 1994, ch. 1106, § 1, No. 9 Deering's Adv. Legis. Serv., p. 6312.)
Restitution directly from a defendant is premised upon the defendant's conviction, and it is measured by the amount of the victim's loss, absent "compelling and extraordinary reasons" to reduce it. (Gov. Code, former § 13967, subd. (c); Pen.Code § 1202.4, subds. (a)(1) & (f).)
Both the language of the statute and the legislative findings made in 1994 speak broadly of "restitution," when describing both restitution fines and victim restitution. Accordingly the legislative findings describe restitution as having both "a rehabilitative effect on criminals" and as acting as "a deterrent to future criminality." (Stats.1994, ch. 1106, § 1, No. 9 Deering's Adv. Legis. Serv., p. 6312.) Similarly the statute directs that the "court, in addition to any other penalty provided or imposed under the law, shall order the defendant to pay both" types of restitution. (Gov.Code, former § 13967, subd. (a); Pen.Code § 1202.4, subd. (a)(3).)
Victim restitution in 1993 could be imposed as an alternative to "all or a portion of the restitution fine." (Gov.Code, former § 13967, subd. (c).) Thus at the time defendant committed his crimes the statutory scheme both described and treated victim restitution and restitution fines as so closely related as to be interchangeable penalties.
Set against these indicia of legislative intent to treat victim restitution as a criminal penalty analogous to a restitution fine, a victim restitution order has been characterized consistently as enforceable as if it were a civil judgment. (Gov.Code, former § 13967, subd. (c); Pen.Code, § 1202.4.)
Therefore, the Legislature may not have intended victim restitution to be a criminal punishment. Because I find there to be some doubt I reach the second level of inquirywhether the statutory scheme is so punitive either in purpose or effect as to transform what was intended to be a civil remedy into a criminal penalty. (People v. Hanson, supra, 23 Cal.4th at p. 361, 97 Cal.Rptr.2d 58, 1 P.3d 650; Hudson v. United States, supra, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450.)
The punitive purpose of restitution was made express by the legislative findings cited above which characterize it as operating as a deterrent and as having a "rehabilitative effect." Moreover, victim restitution, like a restitution fine, is only imposed upon conviction of a crime.
Securing the right to restitution for persons who suffer loss as a result of criminal activity is also one of the legislative purposes for victim restitution. Thus providing compensation for victim loss is an alternative, and potentially non-punitive purpose of restitution. However, as the majority notes, this measure of loss results in an order for an extremely large sum in victim restitution; the majority points to one case in which it amounted to a million dollars or "more than 100 times the maximum" possible restitution fine. (Maj. opn., ante, at p. 139.) By establishing a measure based solely on what has become an ever-expanded definition of victim loss (see Stats.1996, ch. 629, § 3, adding subd. (f)(3)(F) & (G), No. 7 Deering's Adv. Legis. Serv., pp. 3025-3026), however, the statute permits on its face restitution which may well exceed in scope and scale damages which would otherwise be available to the victim were he or she to seek redress in a separate civil suit against the defendant.
*145 While the majority opinion asserts that only economic loss forms the basis for victim restitution, the statute on its face does not so provide. For example, victim restitution for noneconomic loss, such as psychological harm, has long been available from a defendant convicted of lewd acts committed against a child. (Gov. Code, former § 13967, subd. (c); Pen. Code, § 1202.4, subd. (f)(3)(F).)
In sum, viewing the provisions of Penal Code section 1202.4 against the factors enumerated in Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144, 168-169, 83 S.Ct. 554, 9 L.Ed.2d 644, as relevant to the inquiry, I conclude that victim restitution under Penal Code section 1202.4 is both so punitive in purpose and effect as to render it a criminal punishment.
In light of that finding I must further conclude that the increase in the victim restitution here, from zero to an amount totaling some $36,000 offends the double jeopardy provisions of our state Constitution under the rule announced in People v. Henderson (1963) 60 Cal.2d 482, 495-497, 35 Cal.Rptr. 77, 386 P.2d 677. Here defendant having successfully appealed from his conviction for second degree murder, and the People having elected not to retry that charge, finds himself subject to a restitution award to the families of both victims, when at his initial sentencing no award was made to either family. It can scarcely be denied that permitting a restitution award of over $36,000 at resentencing when no restitution award was made initially is not a significant disincentive, indeed penalty, for having taken a successful appeal. The focus of double jeopardy protection under our state Constitution is whether increased punishment on resentencing "operates to penalize the defendant" for having exercised his right to appeal. (People v. Hanson, supra, 23 Cal.4th at p. 365, 97 Cal.Rptr.2d 58, 1 P.3d 650.)
As our Supreme Court in Hanson concluded, the chilling effect upon a defendant's right of appeal which arises from the possibility of greater punishment at resentencing implicates both the state constitutional protections against double jeopardy protections and state constitutional due process guarantees. (People v. Hanson, supra, 23 Cal.4th at p. 366, 97 Cal. Rptr.2d 58,1 P.3d 650.)
Insofar as I find the imposition of victim restitution to be punitive, I can only question whether California's procedure of permitting a punitive sanction, whose upper limit is not defined by statute but by the extent of the victim's loss ascertained in a proceeding which is conducted with the barest of evidentiary and procedural formalities, can be squared with the due process provisions of our federal Constitution. (See Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 [statute permitting finding of racial bias as justification for sentence enhancement was infirm where the finding was not made by a jury under reasonable doubt standard].)
Regardless of the facial constitutionality of the victim restitution scheme, the manner in which it was applied to this defendant raises significant due process concerns. At defendant's original sentencing in December 1994 no victim restitution was ordered. As of mid-February 1995 the mother of Michael Gialouris had requested restitution in the amount of $5,500 and a pre-trial conference was scheduled for March 9, 1995. On March 28, 1995, the district attorney sent a letter to the attorney of the Vigil family notifying them of a proposed restitution hearing and informing them that were it to be held defendant would be brought from prison to local custody which would permit defendant visitation with his family. At the 1999 sentencing the Vigil family denied ever learning about a restitution hearing from their attorney.
Based upon this inconclusive explanation about why no restitution hearing had been had in the months immediately following defendant's first sentencing, the trial court concluded that there was no express statute *146 of limitations as to victim restitution and, noting its statutory obligation to impose restitution, ordered victim restitution for the first time at the 1999 sentencing.
Several points are clear from the record: first, on this record the People did not affirmatively waive victim restitution in 1994; second, in 1995 the Vigil family may either have elected not to pursue victim restitution in light Of its civil suit against defendant and the other young men involved in the death of Joel Vigil, or because the family wished to deny defendant an opportunity to be brought back from state prison, or the family may not have been informed of its right to obtain restitution through failures attributable to it's attorney. Still, the question is not, to my mind, whether either the Vigil family or the People should or should not be bound by principles of waiver, estoppel, or laches.
The issue before us is whether on these facts defendant was denied procedural due process. The dollar effect of waiting until 1999 to impose a victim restitution order of $36,000 was considerable. The trial court calculated the loss of child support from July 1994 to the month of its order, July 1999, or a period of 60 months at $386 per month yielding a total of $23,160. Had defendant been promptly given a restitution hearingsay in March or April of 1995the amount of restitution for child support would literally have been in the range of $3,000 rather than $23,000 dollars. Accordingly, I would reverse that portion of the restitution ordered for child support attributable to the months of May 1995 through July 1999.
The majority opinion suggests that any error in the child support award was invited in light of defense counsel's suggesting that the court should take judicial notice of the support order. I note that when defense counsel made that suggestion no document was before the court, other than a pay stub presented by the Vigil family, from which the amount of the victim's court ordered child support could be verified. Accordingly, I think it misreads the scope of the defense suggestion to assume that counsel was doing anything more than urging judicial notice of the amount of Vigil's child support obligation.
In sum, I find the victim restitution statute as applied to this defendant to violate principles of double jeopardy and due process. However, even if I were to accept the imposition of some $36,000 in victim restitution upon this defendant for the first time at resentencing, I reject as inherently unfair the notion that the victim's loss can be inflated by some $20,000 because the People waited for 5 years in which to bring the matter to hearing.
NOTES
[*] Mosk, J., dissented.
[1] Although we are concerned here solely with the California Constitution's double jeopardy provision, it is analyzed in the same manner as its federal counterpart, and United States Supreme Court decisions are viewed as persuasive authority on its scope and application. (E.g., People v. Caslellanos (1999) 21 Cal.4th 785, 790, 88 Cal.Rptr.2d 346, 982 P.2d 211; People v. Frazer (1999) 21 Cal.4th 737, 754, fn. 15, 88 Cal.Rptr.2d 312, 982 P.2d 180.)
[2] Another concern in double jeopardy inquiries is the presence or potential for vindictiveness against a criminal defendant who successfully appeals a conviction. (E.g., People v. Hanson, supra, 23 Cal.4th 355, 360, 97 Cal.Rptr.2d 58, 1 P.3d 650; People v. Craig (1998) 66 Cal.App.4th 1444, 1447, 78 Cal. Rptr.2d 659.) Defendant has never claimed he was subjected to vindictive behavior and we have found no trace of it in the record.
[*] Retired Associate Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] Government Code Former section 13967, subdivision (c) provided in pertinent part: "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. If a defendant has been convicted of a felony violation of Section 288 of the Penal Code, restitution to the victim may be ordered whether or not the defendant is denied probation.... [Restitution shall be imposed in the amount of the losses, as determined. The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . . Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted. [H] Restitution ordered pursuant to this subdivision shall, to the extent possible, be of a dollar amount that is sufficient to fully reimburse the victim, or victims, for all determined economic losses incurred as the result of the defendant's criminal conduct. If the conviction is for felony violation of Section 288 of the Penal Code, the court may also order that the restitution be paid to the victim to cover noneconomic losses, including, but not limited to, psychological harm. [H] For any order of restitution made pursuant to this subdivision, the defendant shall have the right to a hearing before the judge to dispute the determination made regarding the amount of restitution."

All subsequent statutory references to former section 13967 of the Government Code are to this version.