Filed 12/18/13  In re Chauncey M. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re CHAUNCEY M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHAUNCEY M., <br><br> Defendant and Appellant. | A137798 <br><br> (San Francisco City & County Super. Ct. No. JW10-6474) |

This appeal arises from three automobile burglaries that resulted in minor Chauncey M. (defendant) being declared a ward of the court under Welfare and Institutions Code section 602.  Defendant appeals solely on the basis of a restitution order which awarded, among other amounts, $3,300 for three items of photographic equipment stolen during one of the burglaries.  He claims the evidence was insufficient to support the award because the items were not included in the original police report as having been lost in the burglary.  We conclude the order was supported by substantial evidence and did not involve an abuse of discretion.  We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Because of the limited nature of the appeal, we recite only briefly the facts of the underlying crimes.

1

The first burglary was that of a Ford Explorer while it was parked on Beach Street in San Francisco on September 12, 2010.  A laptop was stolen from the car.  Defendant was apprehended for the offense shortly afterwards when he and two friends were spotted carrying—and then abandoning—a laptop bag near the Marina Safeway.  The bag contained the stolen laptop, which was returned to its owner.

On September 14, 2010, the district attorney filed a four-count wardship petition under Welfare and Institutions Code section 602, alleging defendant had committed second degree burglary of the Ford Explorer (Pen. Code, § 459),[1] theft of the laptop (§ 487, subd. (a)), and felony vandalism of the car based on damage to the window (§ 594, subd. (b)(2)(A)).  The fourth count pertained to a separate incident when defendant allegedly threw a bottle at an occupied car on the highway.  (Veh. Code, § 23110, subd. (b).)

Defendant was initially granted informal probation, but the petition was reinstated on April 12, 2011.  Shortly thereafter, defendant was declared incompetent to stand trial and proceedings were suspended.

The second burglary occurred on July 24, 2011.  The victim was Chloe Jackman, a professional photographer.  She parked her Volkswagen Jetta on Hollis Street in San Francisco at 2:00 a.m. on July 24.  At approximately 2:45 p.m. a neighbor in the area heard a car alarm go off and looked out her front window.  She saw three black juveniles about 12 years old surrounding the Jetta.  One—whom she later identified as defendant—was rummaging through a green camera bag and placing items in his pants.  He then walked down Hollis Street and disappeared from the witness's view.  Nearby police apprehended him and two other suspects.   The neighbor identified two of them, including defendant, as having been involved in the burglary.

On July 26, 2011, a second wardship petition was filed alleging burglary (§ 459) and receipt of stolen property (§ 496, subd. (a)).  Defendant was again found incompetent to stand trial and proceedings were suspended.

---

[1] Statutory references without code designation are to the Penal Code.

Proceedings on both petitions were reinstated on August 14, 2012.

The third burglary occurred on August 23, 2012, when defendant and two of his companions were seen casing a car by two San Francisco police officers in an unmarked car. The officers saw the window of a Toyota shatter just where the boys were standing. Defendant's companions took a backpack and make-up bag out of the car. The officers then approached and arrested defendant and his friends. As they approached they saw defendant untie a spark plug from the drawstring of his sweatshirt and throw it on the ground. They seized the spark plug as evidence, apparently believing it had been used to break the car window.

On August 27, 2012, a third petition was filed, alleging burglary of the Toyota (§ 459) and misdemeanor possession of burglary tools (§ 466).

On August 29, 2012, defendant entered admissions on all three petitions, as amended. On the first petition, the prosecutor dismissed counts one and four and amended count two to allege a violation of section 32 (accessory to burglary) and count three to allege misdemeanor vandalism. Defendant then admitted counts two and three. As to the second petition, the prosecutor amended the charge under section 17, subdivision (b), to allege misdemeanor receiving stolen property (§ 496), and he dismissed the burglary count. Defendant then admitted the misdemeanor receiving allegation. With respect to the third petition, defendant admitted a felony burglary (§ 459), and the misdemeanor count was dismissed. All told, defendant admitted one felony and three misdemeanors.

On October 2, 2012, a dispositional hearing was held in which defendant's custody was vested in the probation department and he was placed at the 33rd Avenue Shelter. On January 28, 2013, a hearing on restitution was conducted at which defendant was ordered to pay the victim of the first burglary $400 to repair the broken window. He was ordered to pay Jackman $10,201.37 for camera equipment stolen during the second burglary and a broken car window. No restitution was ordered on the third burglary because the victim had not provided an estimate of loss on the broken glass. The restitution was ordered joint and several with a co-defendant.

3

This timely appeal raises an issue only with respect to the restitution ordered in connection with the second burglary.

## DISCUSSION

As noted, the restitution order for the second burglary, of Jackman's car, was for $10,201.37. Defendant claims the restitution order was unsupported to the extent of $3,300, for three pieces of photographic equipment and thus constituted an abuse of discretion. More specifically, defendant contends that the finding implicitly underlying that order—that the loss of those three items was caused by defendant's criminal conduct—was not supported by substantial evidence. We disagree.

The victim Jackman filled out a victim impact form, evidently provided by the probation department, which in part detailed her claim for lost equipment, as follows:

| "Nikon D700 | $2,700 | [Serial number] |
|---|---|---|
| Nikon D300s | $1,700 | [Serial number] |
| SB 900 | $450 | [Serial number] |
| SB 900 | $450 | [Serial number] |
| 24 mm 2.8 | $200 | [Serial number] |
| 50 mm 1.4 | $350 | [Serial number] |
| 60 mm 2.8 | $600 | [Serial number] |
| 85 mm 1.4 | $1,400 | [Serial number] |
| 17-55 mm 2.8 | $1,200 | [Serial number] |
| Lighting Equip | $1,000 | NA" |

Jackman also claimed $151.37 for her broken window, with a receipt for the repair included. The list of stolen photographic equipment was not signed by Jackman or made under oath.

In the trial court defendant offered briefing, but no evidence, to oppose an order of restitution with respect to three disputed pieces of photographic equipment: the Nikon D300s camera valued at $1,700, the Nikon 60 mm lens valued at $600, and a lighting kit

4

valued at $1,000.[2]  Defendant's primary argument is that these three items were not listed as stolen at the time the second burglary was reported to the police, and therefore the victim's written statement listing them as items subject to restitution was "not facially credible and insufficiently detailed to support the restitution order."[3]  We conclude the court could properly consider the victim's unsworn statement as evidence of the fact of her loss as well as the value of the stolen items, and thus did not abuse its discretion in determining that the three items were, in fact, stolen during the car burglary, causing the loss claimed by the victim.

Restitution in juvenile cases is governed by Welfare and Institutions Code section 730.6, subdivision (h), which requires the juvenile court to order restitution of "a dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 . . . ."  Restitution orders are reviewed for abuse of discretion.  (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1173; *Gemelli, supra*, 161 Cal.App.4th at p. 1542.)  Where there is a factual and rational basis for the

---

[2] Defense counsel argued in the court below that the "lighting equipment" listed on the restitution inventory was the same as the "power bag" reported to the police and valued at $600.

[3] This language appears to derive from *People v. Gemelli* (2008) 161 Cal.App.4th 1539 (*Gemelli*), where an unsworn statement of losses by the victim, attached to the probation report, was found to support a restitution order for more than $7,000 based on damage to a restaurant caused by a burglar, including more than $5,000 to reconstruct stolen business paperwork.  (*Id*. at p. 1544.)  In commenting on the list of losses, the Court of Appeal noted it was "detailed and facially credible in that it explains how each of the claimed losses is related to the burglary. In addition, each of the repair items shows an amount spent on materials, an hourly rate for labor or professional services, and the amount of time it took to complete the necessary work." (*Ibid*.)  This was merely a comment on the strength of the evidence; it was not intended to set a standard requiring a victim to explain "how each of the claimed losses is related to the burglary."  Moreover, it may be necessary to "explain" how an expense was related to a crime if, as in *Gemelli*, the claim includes amounts for replacing or repairing property not stolen but damaged in the course of the crime.  Here, however, where it was clear in context that all items except the car window were claimed as losses because they were stolen during the burglary, requiring an explicit statement to that effect would appear wholly unnecessary.

5

amount awarded, no abuse of discretion will be found. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045; *In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) " ' " 'In reviewing the sufficiency of the evidence, " '[t]he power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted' to support the trial court's findings." [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.]' [Citation]." (*People v. Keichler, supra*, at p. 1045.) "[M]ethodological imprecision" does not amount to an abuse of discretion. (*People v. Giordano* (2007) 42 Cal.4th 644, 666 (*Giordano*).) Still, no court has discretion to award restitution "not authorized by law, or to find facts for which there is not substantial evidence." (*In re K.F.* (2009) 173 Cal.App.4th 655, 661.)

The victim seeking restitution has the burden of presenting "an adequate factual basis for the claim." (*Giordano, supra*, 42 Cal.4th at p. 664.) Once that prima facie showing has been made, the burden shifts to the defendant to disprove the loss claimed by the victim. (*Gemelli, supra*, 161 Cal.App.4th at p. 1543; *People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) Defendant claims on appeal the victim never made a prima facie showing in this case.

Many courts have allowed reliance upon information in a probation report to establish the prima facie showing, despite its being hearsay, including as proof that the claimed expense was related to the crime. (*People v. Cain* (2000) 82 Cal.App.4th 81, 85-89 [restitution for victim's counseling under § 273.5].) Likewise, they have accepted a victim's unsworn written itemization of losses as prima facie evidence of the loss. (*People v. Collins* (2003) 111 Cal.App.4th 726, 734 [victim's claim of loss recited in probation report]; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406-1407 [probation report requested restitution award of $7,000 to cover attorney fees incurred in recovering for losses caused by defendant's drunk driving]; *In re S.S.* (1995) 37 Cal.App.4th 543, 545 [itemized statement of items lost by victim]; *Gemelli, supra*, 161 Cal.App.4th 1542-1545 [victim's written statement of cost of repairs attached to probation report].)

Nevertheless, defendant cites a handful of cases for the proposition that a more formal evidentiary showing is required. In *People v. Harvest* (2000) 84 Cal.App.4th 641, our colleagues in Division Four reversed a family's claim to restitution for a murder victim's burial expenses because it was contained only in the probation report and was not supported by documentary or testimonial evidence. (*Id*. at p. 653.) We do not agree with that aspect of the opinion.[4]

Defendant cites *People v. Hartley* (1984) 163 Cal.App.3d 126, 130, for the proposition that a court cannot base a restitution order solely on hearsay in the probation report. But that was a case in which the defendant requested and was denied a restitution hearing altogether. (*Id*. at pp. 127-128.) It has no application here.

*In re K.F.*, *supra*, 173 Cal.App.4th 655 is also clearly distinguishable in that the victim claimed as losses both out-of-pocket expenses and amounts paid by third parties, including "organization[s]" and "compan[ies]." (*Id*. at pp. 664-665.) The wording of the claim, together with the documentary evidence, strongly lent itself to an inference the victim had not actually paid for ambulance services provided by Kaiser. (*Id*. at p. 664.) For that reason, the court limited restitution.[5]

And finally, *People v. Vournazos* (1988) 198 Cal.App.3d 948 struck a restitution order where it was based solely on the value recited in the probation report, and where nothing in the probation officer's testimony or report indicated the estimate was based on replacement value. (*Id*. at pp. 958-959.)

But, as we have already ruled, the holding of *Vournazos* is subject to serious doubt, as indicated in several cases:

---

[4] The main issue in *People v. Harvest, supra,* 84 Cal.App.4th 641, was whether imposing a large restitution obligation on remand after appeal (where no restitution had originally been ordered) violated double jeopardy principles. (*Id.* at p. 645.)

[5] However, to the extent the opinion may be read as implying that losses covered by insurance are not compensable as part of a restitution award, it appears to be mistaken. Jackman had already recovered $7,899 from her insurance company, but that would not reduce the amount of restitution due from defendant. (*People v. Birkett* (1999) 21 Cal.4th 226, 246; *People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134; *In re Brittany L.* (2002) 99 Cal.App.4th 1381, 1389.)

"Appellant renews in this court his contention that the victim's losses were insufficiently proven by her itemized statement. He relies on *People v. Vournazos* (1988) 198 Cal.App.3d 948, where the court held insufficient a statement from the victim itemizing stolen or damaged items with asserted values and repair costs. (*Id*. at p. 952, fn. 2.) The court held that this document failed to show that the claimed values represented *replacement* costs, or that the claimed repair costs reflected 'the actual cost of the repair.' (*Id*. at p. 958.)

"The *Vournazos* court professed to acknowledge the rule, adopted in an earlier case, that the defendant 'bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property.' (198 Cal.App.3d at p. 959, citing *People v. Hartley* (1984) 163 Cal.App.3d 126, 130.) In fact the *Hartley* decision stated an even broader rule: 'Since a defendant will learn of *the amount of restitution recommended* when he reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds the replacement or repair cost.' (163 Cal.App.3d at p. 130, italics added, fn. omitted.) The court went on to offer guidelines for the probation officer's 'inquiry or investigation' into the victim's losses. (*Id*. at p. 130, fn. 3.) However the decision appears to mean that, at least where the items, amounts, and sources are adequately identified in or with the probation report, the defendant has the burden of refuting them.

"We find it difficult to reconcile the holding in *Vournazos* with the rule just cited." (*In re S.S.*, *supra*, 37 Cal.App.4th at pp. 546; see also, *Gemelli*, *supra*, 161 Cal.App.4th at p. 1542 ["*Vournazos* has been criticized by other courts"]; *People v. Foster* (1993) 14 Cal.App.4th 939, 946 (*Foster*) [finding reasoning of *Vournazos* "unpersuasive"].)

In the present case the trial court did not rely solely on the probation report. Rather, the victim herself filled out a victim impact form, together with an attachment itemizing losses totaling $10,050.00.[6] A victim's written statement regarding the amount

_____

[6] Jackman itemized lost equipment as being worth $10,050, but she asked for restitution of only $8,300. The record does not elucidate the reason for this discrepancy.

8

of loss constitutes prima facie evidence for purposes of setting a restitution award. (*Keichler, supra*, 129 Cal.App.4th at p. 1048.) It is not necessary that the victim's claim be substantiated through particular testimonial evidence or documentation. (*In re S.S.*, *supra*, 37 Cal.App.4th at p. 547, fn. 2 ["None of the cases hold that the victim must supply a sworn proof of loss or detailed documentation of costs and expenses"].)

"A property owner's statements in the probation report about the value of her property should be accepted as prima facie evidence of value for purposes of restitution. (Cf. Evid. Code, § 810 et seq. [providing 'special rules of evidence applicable to any action in which the value of property is to be ascertained.'])" (*Foster, supra,* 14 Cal.App.4th at p. 946.) " 'Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . sentencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" (*People v. Baumann* (1985) 176 Cal.App.3d 67, 81.)

"This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. (*People v. Rivera* (1989) 212 Cal.App.3d 1153, 1160.) When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount." (*Foster, supra*, 14 Cal.App.4th at p. 947; see also Evid. Code § 813, subd. (a)(2) [allowing owner's opinion as proof of value of property].) Thus, the nature of the evidence was acceptable as prima facie proof of the restitution claim.

Defendant next contends there was no evidence the three disputed items were actually stolen in the car burglary, in large part because they were not included in the initial list of stolen items reported to the police. But we find the evidence was sufficient to support the restitution award despite the fact that there was no specific statement by the victim that the items were stolen from her car. This allegation was implicit in her claim for restitution. (See *In re S.S., supra*, 37 Cal.App.4th at p. 548 ["the trial court was

9

entitled to infer that the 'martial arts weapons and spears' referred to by the victim [in a written statement of losses] were in the car when appellant stole it"].)

We are also not willing to say her claim is foreclosed based on her failure to report all of the missing items immediately. It is true that Jackman did not tell the police on the date of the burglary the three disputed items were missing.[7] Nor, argues defendant, did she inform the police of additional missing items between the time of the burglary and the People's request for restitution, filed four days before the restitution hearing, more than 17 months after the burglary.[8]

Nevertheless, the court did not abuse its discretion in crediting the victim's written statement to the effect that the questioned equipment was lost in the burglary, despite her initial failure to inform police of the additional missing items. By the time she discovered the additional items were missing, she may well have given up hope of recovering her property and may have seen no point in reporting the additional theft to the police. Alternatively, the questioned items may have been stolen and recovered,[9] but

---

[7] Jackman reported the following items missing at the time of the burglary: a power bag estimated at $600 in value, a Nikon D700 valued at $3,200, two Nikon SB 900 flashes valued at $400 each, a Nikon 17-55 mm lens valued at $1,200, a Nikon 85 mm lens valued at $1,200, a Nikon 24 mm lens valued at $1,200, and a Nikon 50 mm lens valued at $350. Thus, the total loss attributable to specific items was $8,550 based on the police report.

[8] The record does suggest, however, that Jackman first made a claim for these items about a year after the burglary, apparently in connection with a claim for restitution in a co-defendant's case.

[9] The police report included a reference to "miscellaneous camera equipment" having been found by police scattered along a nearby sidewalk during their investigation. It may be inferred the equipment was taken from Jackman's car. Whether such equipment included the three disputed items is not established by the record, but even if it did, and even if we could assume those items were returned to Jackman, we have no assurance they were returned undamaged. (Cf. *People v. Collins*, *supra*, 111 Cal.App.4th at p. 734 ["That the stolen items were retrieved and booked into evidence does not establish that they were ever returned to the victim, much less that they were undamaged"].) Thus, it is possible the police were aware of additional stolen items and simply did not enumerate them because they were recovered. The police report certainly

10

in a damaged condition. We will not adopt a rule that a claim for restitution is insufficient to establish a prima facie case for restitution simply because it includes a claim for items not initially reported stolen.

As the trial court observed, a victim would not necessarily "know right away" exactly which items were missing. Since the victim was a professional photographer, it is not unreasonable to credit her statement that she had more than one camera and several lenses in her car before it was burglarized. The court noted that once the victim "had time to reflect and get the serial numbers together," she was in a better position to evaluate her losses. The court summarized, "I am not at all persuaded by the fact that when she first reported her loss that she hadn't . . . fully taken an accounting of everything that was lost. That's quite common."

On the issue of value, defendant offered evidence that some of the stolen items could be bought on the Internet for a price lower than what the victim claimed as their value. Significantly, however, his evidence did not disclose lower prices for the three items in question.

Nor did defendant present testimony or other evidence that the three questioned items had not, in fact, been taken from Jackman's car. The bottom line is that defendant was afforded an opportunity to dispute Jackman's statement of losses in the trial court, and he presented no countervailing evidence. (Cf. *In re S.S.*, supra, 37 Cal.App.4th at p. 548 [if items claimed in a written statement were not in fact stolen, "appellant was competent to so testify. If further details were needed, appellant could attempt to procure them, either by contacting the victim or by requesting that the probation officer do so. Having done none of these things, appellant cannot complain about the lack of detail in the statement"].) So long as Jackman's statement constituted a prima facie showing—and it did—then the burden shifted to defendant to disprove her claim. There is no basis for resolving any ambiguity in the record in defendant's favor.

---

does not *disprove* that Jackman had losses beyond those itemized in the initial incident report.

11

In making its ruling the court emphasized the victim was a "professional photographer" who had "painstakingly" documented "serial numbers and come up with the estimates."  It noted the amount she claimed for her broken window was "below low," and some of her estimated equipment values had gone down from the estimates she gave in the police report.  The court had "no reason" to disbelieve Jackman's estimate of the value of her "professional equipment," especially because it was used by her in her business.  Based on those considerations, the court found the amount claimed by the victim was "reasonable," noting specifically that it "believe[d] her amount."  We cannot call such reasons, going to the weight and credibility of the evidence, an abuse of discretion.

We also note parenthetically that Jackman claimed she lost business and incurred additional expense (equipment rental) after losing her photographic equipment.  No specific dollar amount was claimed, however, and the court awarded her no reimbursement for such economic losses.  To the extent the court was generous in resolving any doubt in favor of compensating her for lost equipment we cannot say it abused its discretion.  The policy of the law is to make the victim whole.  (See generally, *Giordano*, *supra*, 42 Cal.4th at pp. 651-656.)  "The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record."  (Welf. & Inst. Code, § 730.6, subd. (h).)  The award is to be of a "dollar amount sufficient to fully reimburse the victim or victims for all determined economic losses incurred as the result of the minor's conduct for which the minor was found to be a person described in Section 602 . . . ."  (*Ibid*.)  Recoverable amounts specifically could have included lost profits.  (*Id*., subd. (h)(3) & (4).)  We do not say the court erred in failing to award lost profits, but the fact that the stolen equipment was used in the victim's business certainly argues in favor of granting her full restitution for her lost equipment.

Finally, with respect to the exact amount of restitution ordered for the "lighting kit," we find no abuse of discretion.  Defense counsel himself argued below that the "lighting equipment" corresponded to the $600 "power bag" reported stolen in the police

12

report, which seriously undercuts defendant's argument on appeal that it was not initially reported missing. Although no serial numbers were provided for this item or items, we find the court did not err in crediting the victim's statement regarding the value of the lighting equipment. Again, this was a professional photographer who would be expected to have high quality, valuable photographic equipment. The court's acceptance of the victim's estimate was not an abuse of discretion.

## DISPOSITION

The judgment, including the restitution order, is affirmed.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Brick, J.[*]

---

[*] Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.