[No. A115861. First Dist., Div. Two. July 25, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL CLAUDE WILEN, Defendant and Appellant.

**COUNSEL**

Violet Elizabeth Grayson for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Dorian Jung and Jill M. Thayer, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RICHMAN, J.**—This appeal is by a criminal defendant from a postjudgment order directing him to pay $2,631.04. The amount is small, and the odds of collecting it problematic. But the two issues raised by the appeal are, on the surface, as important as any we can confront: (1) Does a defendant who has pleaded guilty to controlled substance crimes and who is subject of a petition for recovery of hazardous cleanup expenses have a right under Health and Safety Code section 11470.2 to have liability for those expenses decided by a jury? and (2) Does the defendant have a right to be present at the hearing when that liability is decided? We conclude that the plain and unambiguous statutory language compels the conclusion that the answer to each question is "Yes." The trial court answered otherwise, refusing a timely demand for a jury, and ruling that defendant had no right to be personally present when the amount of cleanup expenses was determined. In short, the trial court erred on both counts. Nevertheless, given the very limited scope, and impersonal nature, of the issue that would have been put before a jury, we conclude the errors do not qualify as prejudicial. We thus affirm.

## BACKGROUND

In July 2004, police discovered defendant Michael Claude Wilen and Thomas Bonnetta operating a methamphetamine laboratory. The salient events with which we are concerned, all of which occurred in 2006, are easily recounted.

On July 28, both defendants entered open pleas of guilty to numerous charges and admitted a number of enhancement allegations. Among the charges admitted were manufacturing methamphetamine (Health & Saf. Code, § 11379.6, subd. (a)) and possessing precursors to that substance (*id.*, § 11383, subd. (c)(1)).

On August 9, the District Attorney of Contra Costa County filed a petition pursuant to Health and Safety Code section 11470.2 for recovery of $6,500 incurred in "seizing, eradicating, or destroying" the methamphetamine defendants had been manufacturing.

On September 15, the trial court sentenced defendant to state prison for a total term of six years eight months; Bonnetta's total term was eight years.[1] The court imposed a "restitution fine" of $1,200 on defendant, and $1,600 on Bonnetta. The reasons for defendant being treated slightly more leniently than Bonnetta were explained by the court as follows: "[T]he Court has viewed Mr. Wilen in a different light than his codefendant, Mr. Bonnetta. Upon my review of the preliminary hearing testimony and the other documents that were submitted, I find that his culpability in this offense is less[] than that of Mr. Bonnetta[]. [¶] There was manufacturing equipment not located in his [defendant's] locked bedroom. He was living with his girlfriend at the time of the offense, although he had a bedroom in Mr. Bonnetta's house for five months, while Mr. Bonnetta had lived in the house for two years.[2] The house belonged to Mr. Bonnetta. His criminal history, while extensive, is less extensive than Mr. Bonnetta's."

Before defendant was sentenced, the matter of the petition was brought up. While codefendant Bonnetta was being arraigned for sentence, counsel for defendant advised the court "We want to contest it . . . I believe Mr. Wilen is entitled to a jury trial on the amount per the statute, so we would ask for a jury trial." The prosecutor responded, "Set it forthwith, please." A moment later, the prosecutor added, "Actually . . . because—I think this is a civil matter under Health and Safety Code section 11470.2(b), I don't think their presence is required." The court stated, "I don't believe it's required."

---

[1] The sentencing occurred over the vehement protests of the district attorney. His disagreement was so strong that he appealed for the purpose of overturning what he believed to be an excessively lenient sentence. One of the grounds on which the district attorney attacked the sentence was that various dismissals made by the trial court did not comply with Penal Code section 1385. We reluctantly agreed, holding that Supreme Court precedent required us to reverse without undertaking to inquire whether the trial court's noncompliance was subject to harmless error analysis. The Supreme Court recently granted review to examine the issue. (*People v. Bonnetta* (2007) 156 Cal.App.4th 1315 [68 Cal.Rptr.3d 161], review granted Mar. 12, 2008, S159133.)

[2] At a later point in the sentencing hearing, the prosecutor made a point of noting that "The People would also dispute the Court's finding about who lived at the residence based on the preliminary hearing transcript, for the record."

After Bonnetta was sentenced, but before defendant was sentenced, there was some discussion about the absence of supporting documentation.[3] During this discussion, the prosecutor stated: "My issue is are we going to have a court hearing or are they going to insist on a jury trial . . . ? If we're going to insist on a jury trial, I want it set at the earliest possible date so that this can be resolved." The court put the matter over for a week, to September 22, the time before the abstract of judgment would be prepared, "and on that date you make your decision. You want a jury trial, you want a court trial, whatever it is that you want."

The hearing on September 22 opened with the district attorney advising the court that the amount sought by the petition was reduced to $4,552.10. Counsel for Bonnetta complained that $2,600 of this amount was "supported by nothing more than a footnote" in the prosecutor's supporting papers, but that his client was nevertheless willing to have the matter heard at that time by the court "and deal with the amount that we just got in court today." The court asked defendant's counsel, "are you planning on setting a hearing or not?" Counsel replied "Yeah. [¶] . . . [¶] Are we going to agree to this amount today? No." The court then set a "restitution hearing" for October 13.

But there remained the petition as against codefendant Bonnetta. The prosecutor told the court, "I need a jury trial waiver, [¶] . . . [¶] Judge, I need a jury trial waiver." This is what followed:

"THE COURT: You want to take it?

"[THE PROSECUTOR]: Yes. [¶] Mr. Bonnetta, you have a statutory right to a jury trial on the petition in this matter. [¶] Do you understand that right?

"DEFENDANT BONNETTA: Yes.

"[THE PROSECUTOR]: And do you agree to give that right up so that only a court will decide the restitution amount?

"DEFENDANT BONNETTA: Yes.

"[THE PROSECUTOR]: Counsel, join and concur?

---

[3] Although the amount specified in the petition was $6,500, Bonnetta's counsel observed that "the supporting documents don't come close to 6,500. In fact, they're in the 3,000 range. And there's no underlying documents even for that." The prosecutor advised the court that she was still waiting for documentation from "Hazmat" (i.e., persons responsible for disposing of "hazardous materials") and the sheriff's department. At a later point in the hearing, the court gently chided the prosecutor for this delay: "frankly, it seems that they had plenty of time to figure out what their costs are. It's two years old."

"[COUNSEL FOR BONNETTA]: Yes.

"[THE PROSECUTOR]: The People also waive jury trial."

There followed an extensive discussion among the court and counsel for the three parties concerning the nature of the proceeding and whether it could be conducted in the absence of defendants. The court and the prosecutor believed that it could, and should not in any event delay the start of defendants' prison commitments.[4] The hearing ended with the prosecutor stating, "I need a jury trial waiver from Mr. Wilen." Defendant's counsel replied that "I want[] to see whether he's going to have the right to be here or not before he decides whether he's going to be waiving jury trial or not."

At the hearing the court gave defendant's counsel 72 hours to produce a letter brief with authority showing that defendant had a right to be present at the next hearing on October 13. On September 25, counsel for defendant submitted a memorandum to the court, arguing that defendant was entitled to be present at the hearing by virtue of Penal Code section 977, and that such right was also inherent in the concept of the jury trial promised by Health and Safety Code section 11470.2.

That same day the prosecutor submitted a letter brief that disputed both of defendant's points. First, citing *People v. Brach* (2002) 95 Cal.App.4th 571 [115 Cal.Rptr.2d 753] (*Brach*), the prosecutor contended that "the *constitutional* right to jury trial is inapplicable to any restitution hearing, including the hearing in such a case as this one." Second, "There is no provision within section 11470.2 for the personal presence of the defendant. Accordingly, defendant has no constitutional or statutory right to be present at the restitution hearing in this case."

Neither defendant nor Bonnetta was present on October 13. The hearing opened with their counsel again maintaining that their clients had a right to be present. Reversing the course she had taken earlier, the prosecutor now

---

[4] "[THE PROSECUTOR]: [T]he defendants don't have a constitutional right to be present at a trial where the only provision for it to exist is by statute. There's no constitutional right to a trial on the restitution amount, so the defendants need not be present. Nothing should hold them up from being sent to the Department of Corrections."

At one point in the hearing the court addressed defendant's counsel: "The Court has entered judgment. For all intents and purposes he's done. He can be shipped off tomorrow. [¶] . . . [¶] He has no right to be present. This is strictly a monetary issue. He has no right to be present. So unless you can give me something that says there's a reason under the Constitution that he has a right to be present here, he's going to be shipped out."

At another point the prosecutor stated that while Health and Safety Code section 11470.2 "creates a statutory right to a jury trial . . . [t]he statute itself does not contain a right for the defendant to be present."

argued that neither defendant had a right to a jury trial: "It's the People's position that where the defendant has waived jury trial in order to admit or plead no contest to the charges underlying the restitution petition, then a new [*sic*] jury to decide the issues for restitution lies in the discretion of the trial court."

Counsel for defendant responded, "this petition wasn't filed until after his waiver of a jury trial had already been entered and accepted by the Court, so he clearly was not told or informed or even knew that the People were going for . . . restitution under 11470.2." Then, addressing the language of Health and Safety Code section 11470.2,[5] counsel continued: "I think when it talks about in the discretion of the judge, that's saying whether it's the same jury or whether it should be . . . a new jury in the discretion of the Court comma unless waived by the consent of all parties. [¶] I really believe that the way that's written is that it's up to the Court to decide whether it should be the same jury or a different jury. That's something they're leaving to the discretion of the Court. [¶] But in whether the defendant gets a jury trial, I don't believe the Court has any discretion on that. And he has not personally waived that. And they specifically add that at the end, that this is all unless waived."

Apparently agreeing with the prosecutor about the impact of *Brach, supra,* 95 Cal.App.4th 571, the trial court ruled that defendant "does not have [a] right to be present, and therefore I'm going to deny the request to have him present. [¶] Now the second issue, . . . is whether . . . he does have a right to the jury trial when there has not been a jury impaneled for the purposes of the guilt proceedings. [¶] Under *Brach* it seems to state in its discussion that he is not entitled to a jury trial. [¶] . . . [¶] . . . There is no constitutional right to a jury trial on issues of restitution, and there is no such right under Health and Safety Code section 11470.2 to determine that restitution amount for eradication expenses. [¶] So under my reading of *Brach* . . . the issue of whether or not it's the guilt phase jury versus the restitution phase jury is in the discretion of the Court . . . . [¶] But I don't read that case to say that there is an absolute right to a jury trial where there's been a waiver of his right to trial and he has pled guilty . . . . [¶] So I am going to deny that as well, and that is under *People v. Brach.*"

The prosecutor then called three witnesses. The first was "an account clerk for the crime lab for the Sheriff's Department," who testified from the invoice

---

[5] Specifically, subdivision (d), which provides: "If the defendant denies the petition or declines to admit to it, the petition shall be heard in the superior court in which the underlying criminal offense will be tried and shall be promptly heard following the defendant's conviction on the underlying offense. The hearing shall be held either before the same jury or before a new jury in the discretion of the court, unless waived by the consent of all parties." (Health & Saf. Code, § 11470.2, subd. (d).)

she prepared for $2,689.50 (16.3 hours at $165 per hour), and that it represented "the total amount of expenditures for the crime lab in this case in seizing, eradicating, and destroying the methamphetamine laboratory."[6] The second witness worked for the hazardous materials program in the Contra Costa County Health Department, and testified about the $782 cost of cleanup efforts by him and another county employee for red phosphorus. The third witness, employed by California's Department of Toxic Substances Control, testified his agency paid $504.29 towards disposal costs of the red phosphorus.[7] The hearing was continued to November 3.

On November 3, a fourth witness testified to $1,080.60—20 hours at $54.03 per hour—incurred by the drug investigation unit of the sheriff's department.[8] After hearing extensive argument from counsel, the court "set this over for decision" to November 17.

On November 17, the court ruled that "the total recovery" against defendant would be $2,631.04, and against Bonnetta $1,344.75. Five days later the court filed a "Decision Regarding Defendant's Restitution," directing defendant to pay $2,631.04. On December 7, defendant filed a timely notice of appeal from the written order.

## DISCUSSION

### The Statutes Governing Reimbursement of Illegal Drug Manufacturing Cleanup Costs

On his appeal, defendant contends that the evidentiary hearing held on the prosecution's petition was deficient in two respects. First, that it was conducted by the trial court acting as the trier of fact, when the trier of fact should have been a jury, as statutorily provided, and as defendant demanded in a timely fashion. Second, and without regard to who was acting as the trier of fact, defendant was entitled to be present when the merits of the petition were decided.

---

[6] This testimony was received over objection by defense counsel that the witness had no personal knowledge of the cleanup operations, and thus had no foundation for expressing hearsay conclusions about the costs incurred during the cleanup operations.

[7] It appears that local authorities collect and package the chemicals and materials, which are transmitted to the state agency, which in turn sends it out of state for incineration. In this case, the agents were dealing with approximately two ounces of red phosphorus residue in a large bucket. There was no dispute that the red phosphorus was seized at a location that defendant was using as his residence, i.e., not the location of the actual manufacturing site that was owned by Bonnetta.

[8] Defendant attacked this testimony on the ground that it came from an officer who was not present, was not even in the drug suppression unit at the time, and who thus did not know how much of the time claimed was actually devoted to cleanup efforts, as opposed to "general detective duties."

Before addressing the first of these contentions, it is useful to repeat the brief survey of the relevant statutes and their history, set out in a recent decision by our Supreme Court:

"On June 8, 1982, the voters of California adopted Proposition 8, an initiative amending our Constitution (Cal. Const., art. I, § 28, subd. (b)) to grant 'victims of crime a constitutional right' to receive restitution from defendants convicted of crimes that caused the victims economic loss. [Citations.] In response, the Legislature enacted an array of statutes covering restitution or recovery of expenses by crime victims. Among those statutes are Health and Safety Code section 11470.1 and 11470.2, as well as Penal Code section 1202.4.

"In March 1983, at the urging of the Attorney General, state Senator Barry Keene introduced Senate Bill No. 1121 . . . to add sections 11470.1 and 11470.2 to the Health and Safety Code. The purpose of the bill was 'to require those who engage in illegal drug activities' to repay the costs incurred in seizing and destroying unlawful substances akin to 'the charges imposed under existing law for abating other nuisances.' [Citation.] The bill sought to alleviate the financial burden on law enforcement agencies—especially those in small rural areas—of eradicating marijuana plants and closing clandestine drug labs. [Citation.] By permitting law enforcement to recover its cleanup costs, the legislation sought to ensure that 'those who engage in illegal drug activities' would 'bear the costs of eliminating their abuses.' [Citation.] The new legislation took effect on January 1, 1984." (*People v. Martinez* (2005) 36 Cal.4th 384, 388–389 [30 Cal.Rptr.3d 779, 115 P.3d 62] (*Martinez*).)

Health and Safety Code sections 11470.1 and 11470.2 established a two-track approach for recovering the costs incurred in cleaning up illegal substance operations.

■ "The expenses of seizing, eradicating, destroying, or taking remedial action with respect to, any controlled substance or its precursors shall be recoverable from: [¶] (1) Any person who manufactures or cultivates a controlled substance or its precursors . . . ." (Health & Saf. Code, § 11470.1, subd. (a)(1).) A civil action to recover these expenses "may be brought by the district attorney, county counsel, city attorney, the State Department of Health Services, or Attorney General." (*Id.*, subd. (d).) "It shall not be necessary to seek or obtain a criminal conviction prior to the entry of judgment for the recovery of expenses. However, if criminal charges are pending against the defendant for the unlawful manufacture or cultivation of any controlled substance or its precursors, an action brought pursuant to this section shall, upon a defendant's request, be continued while the criminal charges are pending." (*Id.*, subd. (c).) ■ Testimony or admissions made by the

defendant in a civil action "shall not be admitted or otherwise used in any criminal proceeding arising out of the same conduct." (*Id.*, subd. (k).) An acquittal in the criminal proceeding will bar the civil action only if there was "a finding of factual innocence by the court" in the criminal case. (*Id.*, subd. (*l*).)

Health and Safety Code section 11470.2 specifies an alternate procedure for recovering those expenses. In parallel language it provides that "In lieu of a civil action for the recovery of expenses as provided in Section 11470.1, the prosecuting attorney in a criminal proceeding may, upon conviction of the underlying offense, seek the recovery of all expenses recoverable under Section 11470.1 from: [¶] (1) Any person who manufactures or cultivates a controlled substance or its precursors . . . ." (*Id.*, subd. (a)(1).)

"The prosecuting attorney may, in conjunction with the criminal proceeding, file a petition for recovery of expenses with the superior court of the county in which the defendant has been charged with the underlying offense. The petition shall allege that the defendant had manufactured or cultivated a controlled substance . . . and that expenses were incurred in seizing, eradicating, or destroying the controlled substance or its precursors. The petition shall also state the amount to be assessed." (Health & Saf. Code, § 11470.2, subd. (b).)

■ The defendant "may admit to or deny the petition for recovery of expenses. If the defendant admits the allegations of the petition, the court shall rule for the prosecuting attorney and enter a judgment for recovery of the expenses incurred." (Health & Saf. Code, § 11470.2, subd. (c).) However, "If the defendant denies the petition or declines to admit to it, the petition shall be heard in the superior court in which the underlying criminal offense will be tried and shall be promptly heard following the defendant's conviction on the underlying offense. The hearing shall be held either before the same jury or before a new jury in the discretion of the court, unless waived by the consent of all parties." (*Id.*, subd. (d).)

■ According to our Supreme Court, "these provisions are the 'exclusive' means by which a government entity that is not a direct victim of a crime may recoup its costs of eradicating or cleaning up toxic or hazardous substances resulting from controlled substance crimes."[9] (*Martinez, supra*, 36 Cal.4th 384, 394.)

---

[9] The court was here quoting the characterization of Division Three of this appellate district in *People v. Narron* (1987) 192 Cal.App.3d 724, 729 [237 Cal.Rptr. 693] (*Narron*), that "Health and Safety Code section 11470.1 . . . along with section 11470.2, provides the exclusive remedy for reimbursement of the expenses recoverable under these statutes." The *Narron* characterization was also accepted in *Brach, supra*, 95 Cal.App.4th 571, 576. Both *Narron* and *Brach* figured prominently, and favorably so, in the *Martinez* opinion.

■ The concept of a "direct victim" derives from Penal Code section 1202.4, which is the primary statute implementing the constitutional right of a crime victim to restitution. In accordance with the constitutional command, section 1202.4 opens by declaring that "a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Pen. Code, § 1202.4, subd. (a)(1).) Upon conviction, the sentencing court must order the defendant to pay a "restitution fine" and "[r]estitution to the victim." (*Id.*, subd. (a)(3).) The amount of the restitution fine is, within minimum and maximum amounts, dependent upon the nature of the offense and the sentencing court's discretion; only in "compelling and extraordinary" cases may a restitution fine not be imposed. (*Id.*, subds. (b)–(c).)

■ Victim restitution compensates for "economic loss" suffered as a result of the defendant's conduct. (Pen. Code, § 1202.4, subds. (a)(1), (f), (f)(3).) "The defendant has a right to a hearing . . . to dispute the determination of the amount of restitution." (*Id.*, subd. (f)(1).) The amount is fixed by the sentencing court, "based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling sand extraordinary reasons for not doing so . . . ." (*Id.*, subd. (f).)

■ "Victim" is statutorily defined to include specified classes of persons, and "Any corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime." (Pen. Code, § 1202.4, subd. (k)(2).)

## Defendant Did Not Waive the Opportunity to Contend That He Was Deprived of His Statutory Right to a Jury Trial

As a threshold matter, the Attorney General contends that the merits of the jury trial issue are not properly before us because any jury trial right conferred by Health and Safety Code section 11470.2 was surrendered by defendant when he entered his pleas of guilty to the substantive offenses. The Attorney General is referring to a provision of the written change of plea form, where defendant initialed the following: "I understand that conviction of the charge(s) will require me to pay appropriate restitution to the victim(s) of my crimes and/or to pay a restitution fine of not less than $200 and not more than $10,000 [for a felony conviction] or not less than $100 and not more than $1,000 [for a misdemeanor conviction]." As the Attorney General

reasons, even if it assumed that defendant had a purely statutory right to have a jury determine the prosecutor's petition, that right was encompassed within defendant's broader waiver of jury trial when he pleaded guilty. We cannot agree, because *Martinez* puts a large hole in the Attorney General's waiver argument.

*Martinez* considered the propriety of an order, made under the authority of Penal Code section 1202.4, for more than $5,400 for drug laboratory cleanup expenses incurred by the same Department of Toxic Substances Control that helped remediate the laboratory run by defendant and Bonnetta. The Supreme Court held that the state department did not qualify as a direct "victim" entitled to restitution under the Penal Code provision because "defendant's attempt to manufacture methamphetamine was not an offense committed against the Department, nor was the Department the immediate object of his crime." (*Martinez, supra*, 36 Cal.4th 384, 392–394.) Expressly agreeing with *Narron*, the court held that, for a governmental entity which does not qualify as a direct victim of crime, Health and Safety Code sections 11470.1 and 11470.2 "are the 'exclusive' means by which a government entity that is not a direct victim of a crime may recoup its costs of eradicating or cleaning up toxic hazardous substances resulting from controlled substance crimes." (36 Cal.4th at p. 394.)

■ Restitution fines are a very different animal. They are virtually mandatory upon conviction, even in the absence of a victim, except when the sentencing court finds "compelling and extraordinary reasons" for not imposing a restitution fine. (Pen. Code, § 1202.4, subd. (c).) Collected restitution fines do not go directly to a victim, but are "deposited in the Restitution Fund in the State Treasury." (*Id.*, subd. (e).) And restitution fines are statutorily defined as punishment imposed within the context of a criminal proceeding. By contrast, victim restitution is discretionary, dependent upon the existence of a victim, and enforceable in civil courts. (See *People v. Hanson* (2000) 23 Cal.4th 355, 361–362 [97 Cal.Rptr.2d 58, 1 P.3d 650]; *People v. Harvest* (2000) 84 Cal.App.4th 641, 647–648 [101 Cal.Rptr.2d 135].)

There can be no doubt that the concepts of "restitution" and "restitution fine" as those terms were used in defendant's change of plea form derive from Penal Code section 1202.4; this can be verified with a quick glance at the statute's language.[10] At the time defendant changed his pleas, both terms

---

[10] "Upon a person being convicted of any crime in the State of California, the court . . . [¶] . . . shall order the defendant to pay both of the following: [¶] (A) A restitution fine in accordance with subdivision (b). [¶] (B) Restitution to the victim or victims . . . ." (Pen. Code, § 1202.4, subd. (a)(2)–(3).) "The restitution fine . . . shall not be less than two hundred dollars ($200), and not more than ten thousand dollars ($10,000), if the person is convicted of a felony, and shall not be less than one hundred dollars ($100), and not more than one thousand

had established meanings. Equally established was the "exclusive remedy" of Health and Safety Code sections 11470.1 and 11470.2, certainly in this appellate district since *Narron* in 1987, and statewide since *Martinez*, which was decided in July 2005, more than a year before defendant changed his pleas.

Here, none of the agencies compensated by the trial court's order qualifies as a direct victim entitled to restitution. The Attorney General does not argue otherwise. The reporter's transcript of the hearing at which defendant changed his pleas is silent on the matter of restitution or cleanup costs. Thus, we cannot conclude that this was an instance where "the parties intended to leave the amount of defendant's restitution . . . to the discretion of the court . . . ." (*People v. Crandell* (2007) 40 Cal.4th 1301, 1309 [57 Cal.Rptr.3d 349, 156 P.3d 364].) Moreover, it is only common sense that defendant cannot be held to have knowingly and intelligently waived a right which up to then had never been mentioned—and which might never become an issue. (See *People v. Davis* (2005) 36 Cal.4th 510, 531–532 [31 Cal.Rptr.3d 96, 115 P.3d 417]; *People v. Dorado* (1965) 62 Cal.2d 338, 353 [42 Cal.Rptr. 169, 398 P.2d 361] ["Obviously, defendant could not waive the right . . . unless he knew of that right."].)

In light of the foregoing, we conclude that defendant did not waive his right to invoke the procedural protections of Health and Safety Code section 11470.2 when he acknowledged at the time he changed his pleas that he would be subject to pay "restitution to the victim" and "a restitution fine."[11]

### The Trial Court Erred in Denying Defendant's Demand for Jury Trial

Much before us is undisputed. There is no doubt that the prosecuting attorney invoked Health and Safety Code section 11470.2 as the basis for his

---

dollars ($1,000), if the person is convicted of a misdemeanor." (*Id.*, subd. (b)(1).) The actual language of the plea provision language is obviously taken from subdivision (b)(1).

[11] We also note an anomaly in the Attorney General's logic. Suppose that the cleanup costs exceeded $10,000. Following the Attorney General's reasoning, defendant's purported waiver would limit recovery of expenses to the $10,000 specified in the change of plea form. In light of the number of personnel and agencies required to clean up the site in this case, it is easy to imagine that remediation expenses for a major illegal laboratory could easily surpass that figure. It would follow that, if recovery in excess of that amount was sought, the waiver would not be effective, and Health and Safety Code section 11470.2 would have to be used for the excess. This would merely return matters to where we began. Such a result would, to say the least, be peculiar.

It should be borne in mind that while there is no limit on direct victim restitution (see *People v. Giordano* (2007) 42 Cal.4th 644 [68 Cal.Rptr.3d 51, 170 P.3d 623] [$167,711.65]; *People v. Hove* (1999) 76 Cal.App.4th 1266 [91 Cal.Rptr.2d 128] [$286,565.92]), restitution fines are statutorily capped at $10,000. (*People v. Crandell, supra,* 40 Cal.4th 1301, 1310; *People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534 [86 Cal.Rptr.2d 134].)

petition. And no doubt that defendant did not admit the allegations of the petition. Most significantly, defendant did not waive his right to a jury deciding the allegations of the petition—indeed, he repeatedly demanded that a jury be empanelled.

Subdivision (d) of Health and Safety Code section 11470.2 could hardly be more clear: "If the defendant denies the petition or declines to admit it, the petition shall be heard . . . and shall be promptly heard following the defendant's conviction on the underlying offense. The hearing shall be heard either before the same jury or before a new jury in the discretion of the court, unless waived by the consent of all parties." Not surprisingly, all of the reported decisions take the defendant's right to jury trial as self-evident from the statutory language. (See *Martinez, supra*, 36 Cal.4th 384, 390 ["a criminal defendant who contests a petition for recovery filed in the prosecution for a drug offense is entitled to a jury trial before recovery can be granted . . ."]; *Brach, supra*, 95 Cal.App.4th 571, 577 ["there is no showing defendants expressly consented to forgo their right to have the jury decide the issue"]; *Narron, supra*, 192 Cal.App.3d 724, 737 ["Section 11470.2 affords the defendant the opportunity to have the restitution issue decided by a jury."]; *id.* at pp. 738–739 ["the formal procedures, including the right to a jury trial, required by section 11470.2"].)

■ " '[T]o seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, *in the legal and broader culture. . . .*' " (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].) That is not hard here. We think it noteworthy that, apart from arguing that defendant has waived the point, the Attorney General makes no effort to argue that the words of subdivision (d) of Health and Safety Code section 11470.2 have a meaning that differs from that argued by defendant—and recognized by *Martinez, Brach,* and *Narron.* However, out of respect for the trial court, we consider whether *Brach* demonstrates that denial of defendant's demand for a jury trial was proper.

*Brach* involved a defendant who pleaded guilty to cultivating marijuana. Repayment of the cleanup expenses was made a condition of her probation. On appeal, she attacked the condition as invalid because it was not imposed in compliance with Health and Safety Code section 11470.2. The Court of Appeal held—and this is all it held—that the objection was waived because it was not first raised before the trial court. (*Brach, supra*, 95 Cal.App.4th 571, 577–580.) The situation in *Brach* is obviously distinguishable. We are not dealing with cleanup expenses imposed as a condition of probation, and we certainly do not have defendant failing to assert his rights under section 11470.2, Thus, we conclude that the trial court's ruling cannot be upheld under authority of *Brach.*

 If the issue of defendant's guilt or innocence had been submitted to a jury, subdivision (d) of Health and Safety Code section 11470.2 gives the trial court the discretion to submit the contested factual issue of his liability for cleanup expenses to the same jury, or to empanel a new jury to determine that more limited issue. Because defendant pleaded guilty to the underlying charges, the former course was not an option. But the absence of a formal trial on the substantive offenses does not mean that the statute then became a dead letter. The language of the statute clearly contemplates that a separate jury may be empanelled, after the underlying charges have been resolved, and solely for the purpose of determining liability for cleanup expenses, if the defendant does not forgo or waive that option. That is what defendant sought. The trial court's discretion under the statute did not extend to a complete denial of what the statute provided. "Courts cannot give or withhold at pleasure. If the claim is enforced or recognized it is because the claim is a right . . . ." (*Southern Pacific Co. v. Jensen* (1917) 244 U.S. 205, 220 [61 L.Ed. 1086, 37 S.Ct. 524] (dis. opn. of Holmes, J.).)

 The statute means what it says. Because the statutory language is plain and its meaning unambiguous, it is to be enforced according to the usual and ordinary meaning of its terms. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230–231 [99 Cal.Rptr.2d 570, 6 P.3d 228]; *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)[12] We therefore conclude that the trial court erred when it denied defendant's request for the jury trial guaranteed him by subdivision (d) of Health and Safety Code section 11470.2. We defer assessing the impact of this error until after we address defendant's second contention.

## The Trial Court Erred in Denying Defendant's Demand to Be Present at the Hearing on the Petition

 A defendant has a right to be present at critical stages of a criminal prosecution, a right protected by both the federal constitution and the state constitution. (U.S. Const., 6th & 14th Amends.; *Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 107 S.Ct. 2658]; Cal. Const., art. I, §§ 15, 16; *People v. Perry* (2006) 38 Cal.4th 302, 311 [42 Cal.Rptr.3d 30, 132 P.3d 235].) California has also guaranteed the right by statute: "In all cases in which a felony is charged, the accused shall be present at the arraignment, at the time of plea, during the preliminary hearing, during those

---

[12] Moreover, in the event there are any doubts or statutory ambiguities, they would have to be resolved in favor of securing the right to trial by jury. (*Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944, 956, 958 [32 Cal.Rptr.3d 5, 116 P.3d 479]; *Maldonado v. Superior Court* (1984) 162 Cal.App.3d 1259, 1266–1267 [209 Cal.Rptr. 199]; *Byram v. Superior Court* (1977) 74 Cal.App.3d 648, 654 [141 Cal.Rptr. 604].)

portions of the trial when evidence is taken before the trier of fact, and at the time of the imposition of sentence. The accused shall be personally present at all other proceedings unless he or she shall, with leave of court, execute in open court, a written waiver of his or her right to be personally present . . . ." (Pen. Code, § 977, subd. (b)(1); see *id.*, § 1043, subd. (a) ["the defendant in a felony case shall be personally present at the trial"].)

■ The right includes the defendant's presence at "critical stage[s] of the criminal prosecution," which includes "sentencing and pronouncement of judgment." (*People v. Rodriguez* (1998) 17 Cal.4th 253, 257 [70 Cal.Rptr.2d 334, 949 P.2d 31]; see *People v. Robertson* (1989) 48 Cal.3d 18, 60 [255 Cal.Rptr. 631, 767 P.2d 1109]; *People v. Dial* (2004) 123 Cal.App.4th 1116, 1122 [20 Cal.Rptr.3d 573].)

We are unable to follow the logic of the Attorney General's efforts to argue that denying defendant the opportunity to be present at the trial guaranteed by subdivision (d) of Health and Safety Code section 11470.2 was not error. The argument that "A criminal defendant does not have the right to confrontation at the sentencing stage of a criminal prosecution" is clearly predicated on the idea that a trial held pursuant to section 11470.2 would constitute a part of sentencing. Yet by integrating that hearing into the sentencing process, the Attorney General inadvertently backs into the right of personal presence guaranteed by Penal Code sections 977 and 1043, as well as section 1193.[13]

None of the reported decisions considering these provisions has held that it is harmless for a trial court to exclude a defendant who wishes to be present at the time judgment is pronounced. On the contrary, the defendant's absence has by itself been treated as error, frequently prejudicial. (See *In re Perez* (1966) 65 Cal.2d 224, 229 [53 Cal.Rptr. 414, 418 P.2d 6] (maj. opn. of Traynor, C. J.) ["Pronouncement of judgment . . . is a critical stage in the criminal prosecution when the constitutional rights 'to appear and defend, *in person* and with counsel' [citation] apply, and a *judgment pronounced in violation of those rights can be attacked by habeas corpus*." (Italics added.)]; *In re Levi* (1952) 39 Cal.2d 41, 45 [244 P.2d 403] (maj. opn. of Traynor, J.) ["With certain exceptions not applicable here [citations], judgment and sentence in felony cases may be imposed *only in the presence of the accused.*

---

[13] The last cited statute provides in pertinent part: "Judgment upon persons convicted of commission of crime shall be pronounced as follows: [¶] (a) If the conviction is for a felony, *the defendant shall be personally present* when judgment is pronounced against him or her, unless the defendant, in open court and on the record, or in a notarized writing, requests that judgment be pronounced against him or her in his or her absence . . . and the court approves his or her absence during the pronouncement of judgment, or unless, after the exercise of reasonable diligence to procure the presence of the defendant, the court shall find that it will be in the interest of justice that judgment be pronounced in his or her absence . . . ." (Pen. Code, § 1193, subd. (a), italics added.)

If judgment is pronounced in his absence, and no justifying circumstances are shown, *the judgment must be set aside.* [Citations.]" (Italics added.)].) Even one of the decisions cited by the Attorney General finds the Court of Appeal stating that "a hearing on an amount of restitution . . . is part and parcel of the sentencing process." (*People v. Cain* (2000) 82 Cal.App.4th 81, 87 [97 Cal.Rptr.2d 836].)

 Nor are we persuaded by the Attorney General using the quotation from *People v. Waidla* (2000) 22 Cal.4th 690, 742 [94 Cal.Rptr.2d 396, 996 P.2d 46], to the effect that "under sections 977 and 1043 of the Penal Code, a criminal defendant does not have a right to be personally present where he does not have such a right under section 15 of article I of the California Constitution." The exclusion in *Waidla* involved a defendant in a capital case who was not present at "16 conferences at bench, outside the presence of the jury, that related essentially to procedural, evidentiary, and housekeeping and other matters," plus "a single conference in chambers, outside the presence of the jury, that related to instructions." (*Id.* at p. 741.) We cannot conclude that *Waidla*, fairly read, stands for the proposition that a defendant may be categorically excluded from a proceeding where the Legislature has provided the right to have a jury determine a matter of contested fact. Thus, we conclude that defendant did have at least a statutory right to be present at the hearing to determine his liability under Health and Safety Code section 11470.2.

We now address whether this error, and the denial of defendant's jury trial right, qualify as prejudicial, requiring reversal.

## The Errors Were Not Prejudicial

Defendant argues in his brief that the denial of his statutory right to jury trial was structural error of federal constitutional dimension and requires a rule of per se reversal. We disagree, given that restitution in criminal cases is hardly a novel concept. Indeed, neither in his briefs nor at oral argument was defendant able to muster a single explicit decision sustaining his position. And the federal authorities are decisively to the contrary. (See *U.S. v. Milkiewicz* (1st Cir. 2006) 470 F.3d 390, 403, fn. 24 ["courts have concluded that restitution is not the sort of 'punishment' to which the Sixth Amendment applies"]; *U.S. v. Rostoff* (1st Cir. 1999) 164 F.3d 63, 71 ["All circuits that have decided the issue have held that . . . the Seventh Amendment simply does not apply to a determination of the amount of a restitution order."]; cf. *U.S. v. Carruth* (8th Cir. 2005) 418 F.3d 900, 904 ["Those circuits which have considered the question anew in light of *Blakely* are in agreement that it did not alter the analysis or lead to a different result."].)

█ In any event, we are not required to deliver an authoritative answer. For present purposes we shall proceed in the belief that the jury trial right provided by subdivision (d) of Health and Safety Code section 11470.2 is governed by state standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], because our Supreme Court has held in an analogous context when "the right to a jury trial . . . is purely a creature of state statutory law," denial of that right is governed by *Watson.* (*People v. Epps* (2001) 25 Cal.4th 19, 29 [104 Cal.Rptr.2d 572, 18 P.3d 2].)[14] The same standard governs error under state statutes guaranteeing defendant's presence: reversal is required "only if ' "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." ' " (*People v. Davis, supra*, 36 Cal.4th 510, 532–533, quoting *Watson.*)

█ A criminal defendant is entitled to be in court if his presence will have a reasonably substantial relation to the opportunity to defend against the charges. (*People v. Ochoa* (2001) 26 Cal.4th 398, 433 [110 Cal.Rptr.2d 324, 28 P.3d 78]; *People v. Waidla, supra*, 22 Cal.4th 690, 742; *People v. Ervin* (2000) 22 Cal.4th 48, 74 [91 Cal.Rptr.2d 623, 990 P.2d 506].)

At first blush, it seems one can hardly talk about harmless error when considering a criminal hearing where the defendant is excluded, and his lawful demand for a jury spurned. But the hearing was not a full-blown trial, and the issue of guilt or innocence had already been settled by defendant's pleas of guilty. The subject of the hearing was infinitely more modest, namely, whether, and in what amount, defendant would be adjudged liable to pay for the costs of cleaning up the detritus of the criminal acts he had already admitted. The inquiry was actually even more restricted than that. By reason of his guilty pleas, there was no chance defendant would get off scot-free and Bonnetta would be stuck with the entire bill. In short, the only issue was the amount defendant would be ordered to pay.

And that issue would be decided on the most desiccated of grounds. The need for the cleanup would not be denied. The fact that it had actually occurred was never challenged. All that could be contested was the bottom line of what it cost. Defendant was not a percipient witness to the cleanup operation, so he could not offer personal input that would impeach any testimony concerning the operations.

*People v. Epps, supra*, 25 Cal.4th 19, is unusually apposite to the inquiry, because it too involved a denial of a statutory right to have a jury decide an issue collateral to guilt in a criminal proceeding, i.e., whether the defendant

---

[14] In his reply brief, defendant appears to realize that *Epps* dooms his structural error argument, but he nonetheless "respectfully asserts that *Epps* was wrongly decided, in violation off the United States Constitution, and explicitly preserves the issue for federal review."

had as alleged suffered prior felony convictions. (See Pen. Code, §§ 1025, 1158.) The issue here, the amount only of cleanup costs, is only abstractly wider. Both were, in essence, decided on the basis of documents, here via witnesses who in effect authenticated the documents on which the matter was decided by the court.

Finally, the Attorney General draws our attention, and correctly so, to *People v. Bradford* (1997) 15 Cal.4th 1229, 1357 [65 Cal.Rptr.2d 145, 939 P.2d 259], where our Supreme Court held that a defendant whose right of personal presence was denied bears the burden of demonstrating prejudice. This is significant because defendant in his briefs does not identify how his presence would have sharpened the questions his counsel asked at the hearing beyond asserting he "knew what chemicals and equipment belonged where . . . and what belonged to him versus what belonged to his codefend- ant." But none of the witnesses called at the hearing had any personal knowledge of the layout of the drug laboratory. There thus appears to have been no lines of cross-examination, and certainly no real impeachment, that defendant could have suggested to his counsel had he been present.

On the other hand, the approach adopted by defendant's counsel at the hearing was that the bills submitted were in effect padded with improper factors such as bureaucratic overhead that would have been incurred in any event. This approach appears to have enjoyed some success. Of the total of $5,056.39 sought by the prosecutor, the court assessed defendant a little over half that amount, $2,631.04. There is no dispute that the $782 and $504.29 figures were correctly assessed only against defendant because they were attributable to disposing of the red phosphorus: as the prosecutor told the court, "Mr. Wilen was found in possession of the red phosphorus and Mr. Bonnetta had already been arrested." Defendant did not challenge them in the trial court, nor does he now on this appeal. The rest of the award was comprised of $1,344.75, that is, exactly half of the $2,689.50 of the claimed expenses of the sheriff's department crime laboratory. Not one cent from the claim for the $1,080.60 purportedly incurred by the drug investigation unit of the sheriff's department was included. Nothing in defendant's briefs argues that his presence would have contributed to substantiating this approach, or increasing the potency of its delivery.

We do not think there is a reasonable probability that a jury would have returned a more lenient verdict to defendant's face. The errors may thus be treated as nonprejudicial. (Cal. Const., art. V, § 13; *People v. Watson, supra,* 46 Cal.2d 818, 836.)

## DISPOSITION

The order is affirmed.

Haerle, Acting P. J., and Lambden, J., concurred.