Filed 9/6/19

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RICHARD ANTHONY EVANS,<br><br>    Defendant and Appellant. | A154841<br><br>(Solano County<br>Super. Ct. No. FCR319582) |

    Defendant Richard Anthony Evans appeals a victim restitution order. He contends the order must be reversed because he was not present at the restitution hearing, the trial court misunderstood the scope of its discretion, and there was no showing of his ability to pay the restitution ordered here. We shall affirm the order, addressing in the published portion of this opinion why defendant's ability to pay is not relevant in fixing the amount of victim restitution.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

    Defendant was convicted of one count of sodomy of a child 10 years old or younger (Pen. Code, § 288.7, subd. (a))[1] and two counts of sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b)). He was sentenced to a prison term of 55 years to life. Last year, a different panel of this court affirmed the judgment. (*People v. Evans* (June 12, 2018, A151459) [nonpub. opn.].)

    Briefly, the facts are these. Defendant and his wife, C.W., lived with their son and C.W.'s daughters, 13-year-old M. and 9-year-old N. In February 2016, M. told her

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.A and II.B.

[1] All undesignated statutory references are to the Penal Code.

1

mother that appellant sexually abused her and N.  In a separate conversation, N. told C.W. that defendant would give her Hot Wheels when she complied with his requests to touch him or allow him to sexually assault her.  Evidence at trial showed that defendant admitted to both C.W. and the police that he had committed lewd acts against M. and N.

Defendant was charged with committing multiple sex offenses against both girls, but the charges pertaining to M. were dismissed prior to appellant's jury trial.  As to N., defendant was tried on four felonies and convicted on three.

When the trial court sentenced defendant, it reserved jurisdiction over victim restitution.  The District Attorney later filed a restitution motion seeking $4,149.07 already paid by the California Victim Compensation Board to M. and N., consisting of $1,463.75 for relocation expenses, $972 for each of them in mental health services, and $741.32 for home security.

The trial court held a restitution hearing on July 3, 2018.  Defendant was represented by counsel, but he was not personally present.  Subtracting $150.00 to reflect a duplicate bill, the prosecutor revised the request to $3,999.07.  The parties stipulated that at the time of the crimes, defendant was married to the victims' mother and lived in the same house with them; he had never been out of custody since his arrest; and he was currently serving a life sentence.  Although defense counsel argued that these facts rendered the home security expenses superfluous, the trial court awarded the full $3,999.07, payable to the California Victim Compensation Board.

## II. DISCUSSION

### A. Defendant's Absence at Restitution Hearing

Defendant was not present at the July 3, 2018 restitution hearing, which he contends violated his constitutional and statutory right to be present.

A defendant has a constitutional and statutory right to be present at critical stages of a criminal prosecution, including sentencing and pronouncement of judgment.  (*People v. Wilen* (2008) 165 Cal.App.4th 270, 286–287 (*Wilen*); *People v. Sanchez* (2016) 245 Cal.App.4th 1409, 1411, 1414; § 977, subd. (b).)  Restitution hearings are "part and parcel of the sentencing process" (*People v. Cain* (2000) 82 Cal.App.4th 81, 87 (*Cain*)),

2

and are thus a significant part of a criminal case.  (*People v. Dehle* (2008) 166 Cal.App.4th 1380, 1386.)

The federal constitutional right emanates from the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment.  (*People v. Perry* (2006) 38 Cal.4th 302, 311 (*Perry*); see also Cal. Const., art. I, § 15 [criminal defendant has right to be personally present with counsel at trial].)  The statutory right is found in section 977, subdivision (b), which provides that, with exceptions not relevant here, a person accused of a felony "shall be personally present at the arraignment, at the time of plea, during the preliminary hearing, during those portions of the trial when evidence is taken before the trier of fact, and at the time of imposition of sentence."  It allows the defendant to be absent at other proceedings only if he or she executes a written waiver with leave of court.  (*Ibid*.)

The federal constitutional right to be present depends on two conditions:  "(1) the proceeding is critical to the outcome of the case, and (2) the defendant's presence would contribute to the fairness of the proceeding."  (*Perry*, *supra*, 38 Cal.4th at p. 312, citing *Kentucky v. Stincer* (1987) 482 U.S. 730, 745 ["a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"].)  And, as our high court has explained, " '[n]either the state nor the federal Constitution, nor the statutory requirements of section 977 . . . , require the defendant's personal appearance at proceedings where his presence bears no reasonable, substantial relation to his opportunity to defend the charges against him.' "  (*People v. Penunuri* (2018) 5 Cal.5th 126, 162 (*Penunuri*).)

In the circumstances of this case, we conclude defendant's presence bore no "reasonable, substantial relation" to his ability to challenge the request for restitution. Section 1202.4, subdivision (f) requires the trial court to order restitution for victims who have suffered economic loss as a result of a defendant's conduct.  It also provides that "[i]f, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim pursuant to Chapter 5 (commencing with

3

Section 13950) of Part 4 of Division 3 of Title 2 of the Government Code, the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (§ 1202.4, subd. (f)(4)(A).) While this presumption is rebuttable (see § 1202.4, subd. (f)(4)(C)), defendant has not shown any possibility that he could have assisted his counsel in rebutting it.

Defendant suggests that if he had been present, he could have explained to his counsel that the relocation and residential security expenses were unnecessary because he had been in custody since his arrest and was unlikely ever to be released from prison, and he could have demanded an evidentiary hearing into the need for those expenditures. But the parties stipulated to these underlying facts at the restitution hearing, defendant's counsel argued that restitution for home security was unnecessary because of them, and the trial court rejected her arguments.

Defendant also notes that the charges as to M. were dismissed, and argues that he could have provided insight into whether her mental health expenditures were necessary. But he admitted to the police that he committed lewd acts against M., and the trial testimony established she was also the person who first brought the crimes against N. to light. Moreover, the term "victim" for purposes of restitution includes "[t]he immediate surviving family of the actual victim," and a sibling of the victim who has sustained economic loss as a result of the crime. (§ 1202.4, subd. (k)(1) & (3)(A); see *People v. O'Neal* (2004) 122 Cal.App.4th 817, 820–821.) We see no possibility that under these circumstances the trial court would have declined to order restitution for therapy provided to M.

We recognize that a defendant ordinarily has the right to be present at sentencing hearings, and that restitution hearings are part of the sentencing process. (*Wilen*, *supra*, 165 Cal.App.4th at pp. 286–287; *Cain*, *supra*, 82 Cal.App.4th at p. 87.) However, on this record, defendant has not shown that his personal appearance bore a "reasonable, substantial relation to his opportunity to defend" against the restitution request, so as to mandate his personal presence under the standards set forth in *Perry* and *Penunuri*. (*Perry*, *supra*, 38 Cal.4th at p. 312; *Penunuri*, *supra*, 5 Cal.5th at p. 162.) And even if we

4

were to conclude that the trial court erred in proceeding in defendant's absence, we would find the error harmless under either the federal constitutional standard (*Chapman v. California* (1967) 386 U.S. 18) or the state law standard (*People v. Watson* (1956) 46 Cal.2d 818, 836).

## B. Restitution for Residential Security

Defendant contends the trial court misunderstood the scope of its discretion when it included the cost of residential security in the restitution order.

Section 1202.4, subdivision (f) provides that where a victim has suffered economic loss through a defendant's conduct, "the court *shall* require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. . . .  The court *shall* order full restitution." (Italics added.)  The order must be sufficient to reimburse the victim or victims for their economic losses, including the cost to install or increase residential security incurred in relation to a violent felony. (§ 1202.4, subd. (f)(3)(J).)

The trial court has broad discretion in choosing a method to calculate the amount of restitution, and it must use a method that is rationally designed to determine the victim's economic loss.  (*People v. Giordano* (2007) 42 Cal.4th 644, 663–664 (*Giordano*).)  We review the order for abuse of discretion.  (*Id*. at p. 663.)  An abuse of discretion exists if the trial court based its decision on an incorrect legal standard (*People v. Brunette* (2011) 194 Cal.App.4th 268, 276), and we will set aside an order otherwise within the trial court's power if it appears the court failed to exercise the discretion vested in it by law (*People v. Downey* (2000) 82 Cal.App.4th 899, 912).

One of the items for which restitution was sought was the cost of residential security.  Defendant's counsel argued that the court should not award the cost of installing a home security system, based on the stipulated facts that defendant was married to the victims' mother and lived in the same house with them at the time of the crimes, he had been continuously in custody since his arrest, and he was serving a life sentence.  Counsel argued that, although section 1202.4, subdivision (f)(3)(J) authorized

5

restitution for the cost of residential security installed as a result of a violent felony, the amount claimed for residential security here did not fall within the policy underlying the subdivision because defendant was never an intruder and did not pose a risk of future harm to the victims. The prosecutor argued in response, "The law says it's—the way I read it, it is not even permissive, it is shall. It is shall the court order these expenses when convicted with the violent felony. The plain language of the statute is not limited to the circumstances that [defense counsel] talked about," namely that a perpetrator lived outside the home when he committed the crimes or posed a future risk to the crime victims. The prosecutor concluded, "And so under the law, I don't believe it's even in the Court's discretion not to provide this restitution amount." The prosecutor also argued the expenses fell within the policy underlying the statute: the crimes occurred in the home where the family was living, and defendant had sent letters to the victim's mother telling her he wanted to see her.

In awarding the full amount requested, including the cost of the home security system, the court reasoned, "Well, the policy underlying this code section is for if a person's sense of security has been shaken in the home. This offense did occur in the home. I do agree with the People that it is not a permissive, it is a shall."

Defendant argues that the trial court mistakenly believed it was required to award whatever amount was claimed for home security, and that it therefore failed to exercise its discretion to determine the appropriate measure of restitution. We disagree. The record does not suggest that the court believed it lacked discretion to determine whether the expenses were related to defendant's criminal conduct. (See *People v. Moore* (2009) 177 Cal.App.4th 1229, 1232 [" 'The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct" ' "].) Rather, it indicates the court *exercised* its discretion when it concluded that the cost of a home security system fell within the scope of the economic losses caused by defendant's criminal conduct, and that because the crimes occurred "in the home" the victims were entitled to this element of restitution.

6

### C. Ability to Pay Restitution Fine

In supplemental briefing, defendant contends the trial court was required to consider his ability to pay restitution to the victims, in light of the recent decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

The issue in *Dueñas* was whether a court must consider a defendant's ability to pay before imposing certain fines and fees, specifically court facilities and court operations assessments under section 1465.8 and Government Code section 70373, and a restitution fine under section 1202.4, subdivision (b). The appellate court held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay before it imposes court facilities and court operations assessments," and that, "although Penal Code section 1202.4 bars consideration of a defendant's ability to pay unless the judge is considering increasing the fee over the statutory minimum, the execution of any restitution fine imposed under this statute must be stayed unless" the court finds the defendant has the ability to pay it. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1164.) In reaching this conclusion, the court reasoned that imposing unpayable assessments for court facilities and operations on an indigent defendant was unfair and did not serve the legislative intent of augmenting the state's revenues, instead "transform[ing] a funding mechanism for the courts into additional punishment for a criminal conviction for those unable to pay." (*Dueñas*, at pp. 1167–1168.) As to the restitution fine, the court noted that a defendant who had successfully fulfilled the conditions of probation (including payment of the mandatory restitution fine) had a right to have the charges against him dismissed, and reasoned it was fundamentally unfair to deny the same right to a defendant who blamelessly was unable to pay the same fine. (*Id*. at pp. 1170–1171.)[2]

---

[2] Subsequent cases have suggested that the proper analytic framework for evaluating the constitutionality of punitive fines, such as restitution fines under section 1202.4, subdivision (b), is the excessive fines clause of the Eighth Amendment to the United States Constitution, rather than the due process clause. (See, *People v. Kopp* (2019) 38 Cal.App.5th 47, 96–97 (*Kopp*); *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1034 (conc. opn. of Benke, J.).) Other cases have walked back some of the

The restitution payments at issue here are fundamentally different from the fine and assessments in *Dueñas*. As *Dueñas* explains, "California law provides for two types of restitution: direct restitution to the victim (Pen. Code, § 1202.4, subd. (f)), which is based on a direct victim's loss, and a restitution fine (Pen. Code, § 1202.4, subd. (b)), which is not. Payment of direct victim restitution goes directly to victims and compensates them for economic losses they have suffered because of the defendant's crime." (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1169, citing *Giordano*, *supra*, 42 Cal.4th at pp. 651–652.) Restitution fines under subdivision (b) of section 1202.4 "are set at the discretion of the court in an amount commensurate with the seriousness of the offense and within a range set by statute," and "are not paid to the victim of the crime." (*Duenas*, at p. 1169.) The money collected in restitution fines goes directly into state coffers. (§ 1202.4, subd. (e).)

Here, the court ordered defendant to pay victim restitution under section 1202.4, subdivision (f). The Legislature has declared its intent that crime victims who incur economic loss receive restitution from the defendant, and that a restitution award under subdivision (f) should be enforceable as if it were a civil judgment. (§§ 1202.4, subd. (a)(1), (3)(B); 1214, subd. (b).) Courts, too, have explained that victim restitution is intended "as a civil remedy rather than a criminal punishment." (*People v. Harvest* (2000) 84 Cal.App.4th 641, 649–650; accord, *People v. Millard* (2009) 175 Cal.App.4th 7, 35–36, *People v. Kunitz* (2004) 122 Cal.App.4th 652, 657.) For this reason, the court in *Kopp* did not address victim restitution when considering whether to remand for the trial court to hold an ability to pay hearing, instead limiting its analysis to fees, assessments, and a restitution fine under subdivision (b) of section 1202.4. (*Kopp*, *supra*,

language in *Dueñas*, holding that it is the defendant's burden to prove inability to pay, rather than the prosecutor's burden to come forward with contrary evidence, and that future earnings can be considered, along with a defendant's present ability to pay. (*People v. Santos* (2019) 2019 Cal.App. LEXIS 759, *16–17; *Kopp*, at p. 96; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 [same division that decided *Dueñas* ruled that court may consider potential prison pay in determining ability to pay]; see § 2085.5 [restitution balance collected from prison wages].)

38 Cal.App.5th at p. 94, fn. 22.) The statute prohibits courts from considering a defendant's ability to pay in determining the amount of the restitution order. (§ 1202.4, subd. (g).)

The parties have not cited any cases extending the rule of *Dueñas* to victim restitution under section 1202.4, subdivision (f), and our own research has disclosed none. Case law does make clear that the purposes of the assessments and fine considered in *Dueñas* are different from the primary purpose of victim restitution. (*People v. Holman* (2013) 214 Cal.App.4th 1438, 1451 (*Holman*) [comparing purposes of restitution fines and victim restitution].) As *Dueñas* explains, the court facilities and court operations assessments are intended to maintain funding for California courts. (*Dueñas*, *supra*, 30 Cal.App.5th at p. 1165; see *People v. Alford* (2007) 42 Cal.4th 749, 757–758 [§ 1465.8]; *People v. Fleury* (2010) 182 Cal.App.4th 1486, 1492 [Gov. Code, § 70373].) A restitution fine is intended to be additional punishment for a crime. (*Dueñas*, at p. 1169; *Holman*, at p. 1451; *People v. Hanson* (2000) 23 Cal.4th 355, 362.)

The purpose of victim restitution, on the other hand, is neither to raise funds nor to punish a defendant; it "is to reimburse the victim for economic losses caused by the defendant's criminal conduct, i.e., to make the victim reasonably whole." (*Holman*, *supra*, 214 Cal.App.4th at p. 1451.) Section 1202.4 implements the state constitutional mandate that "all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." (Cal. Const., art. I, § 28, subd. (b)(13)(A); *Giordano*, *supra*, 42 Cal.4th at p. 652; *People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) While a victim restitution order may also serve the purposes of rehabilitation and deterrence (*People v. Bernal* (2002) 101 Cal.App.4th 155, 161–162; *People v. Moser* (1996) 50 Cal.App.4th 130, 135–136), its measure is the harm suffered by crime victims and its primary effect is to compensate those victims. This effect is reinforced by the requirement that all moneys collected from a defendant be first applied to victim restitution. (Cal. Const., art. 1, § 28, subd. (b)(13)(C).)

9

Based on the significant differences in purpose and effect between victim restitution and the moneys at issue in *Dueñas*, we decline to extend the rule of *Dueñas* to victim restitution. In a civil action for compensatory damages, a defendant's wealth is irrelevant to liability. (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1242–1243.) We conclude similarly that a defendant's ability to pay victim restitution is not a proper factor to consider in setting a restitution award under section 1202.4, subdivision (f).

We are not persuaded otherwise by the fact that in this case, the victims have already received compensation through the California Victim Compensation Board. As explained in *Holman*, "[t]he Restitution Fund is in the State Treasury Department, and is used to compensate victims for certain kinds of 'pecuniary losses they suffer as a direct result of criminal acts.' (Gov. Code, § 13950, subd. (a).) Crime victims may apply to the Restitution Fund as one avenue to recover monetary losses caused by criminal conduct." (*Holman*, *supra*, 214 Cal.App.4th at p. 1452, citing § 1202.4, subd. (f)(2).) Then, "when direct victim restitution has been satisfied by the victim's application to the victim compensation program, the amounts a defendant is ordered to pay as direct victim restitution are instead paid to the Restitution Fund." (*Holman,* at p. 1452.) We see no reason that defendant should receive a windfall—and the Restitution Fund should suffer a loss—simply because the victims exercised their right to apply to the California Victim Compensation Board rather than waiting for the victim restitution order.

## III.   DISPOSITION

The restitution order is affirmed.

_____

TUCHER, J.

WE CONCUR:

_____

STREETER, Acting P. J.

_____

BROWN, J.

*People v. Evans* (A154841)

11

Trial Court:                          Solano County Superior Court

Trial Judge:                          Hon. Carlos R. Gutierrez

Counsel for Appellant:                Law Office of John F. Schuck and John F.
                                      Schuck, by Court-Appointment under the First
                                      District Appellate Project

Counsel for Respondents:              Xavier Becerra, Attorney General; Jeffrey M.
                                      Laurence, Senior Assistant Attorney General;
                                      Seth K. Schalit, Supervising Deputy Attorney
                                      General; Lisa Ashley Ott, Deputy Attorney
                                      General