Filed 1/15/14  P. v. Scott CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

Plaintiff and Respondent,

v.

MARK ANTHONY SCOTT,

Defendant and Appellant.

F065665

(Super. Ct. No. 11CM1270)

**OPINION**

---

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P.J., Detjen, J. and Peña, J.

Defendant Mark Anthony Scott pled no contest to attempted second degree murder and was sentenced to nine years in prison. He now claims the trial court erred in awarding victim restitution. We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

Shortly after 7:00 p.m. on April 18, 2011, defendant was driving a Mustang near Home and Third in Hanford. Dante Patterson was sitting in the front passenger seat, and Robert Ellis was in the rear passenger seat. Alonzo Curry was driving a Malibu in the opposite direction. Tony Townsend was in the front passenger seat, and Bryan Walker was seated behind Curry. Ellis "waved down" the Malibu, whereupon both vehicles made U-turns and headed toward each other. They stopped driver's side to driver's side, about 15 feet apart. Townsend and Ellis, who had nearly had a fist fight earlier in the day, started arguing from inside their respective vehicles. After about five minutes of verbal exchanges, Ellis yelled, "Shut up," brought up a chrome pistol, and began firing at Walker, Curry, Townsend, and the Malibu. Walker, who ducked when he saw the gun, heard about seven shots. They sounded different, like they were from three different guns. Walker was shot in the back, and Curry was shot in the ankle. Curry was able to put the Malibu in gear and drive away.

Law enforcement investigation revealed more than 10 bullet holes in the windshield and driver's side of the Malibu. A 7.62 millimeter by 39 millimeter shell casing was found in the street where the shooting occurred. The Mustang was found abandoned in Visalia the day after the shooting. A spent nine-millimeter shell casing was found under the driver's seat. On April 22, 2011, the three suspects were arrested in New Mexico as they were on a bus together. A .45-caliber revolver was found concealed on defendant.

---

[1] The facts are taken from the preliminary hearing transcript.

As a result of the incident, defendant, Ellis, and Patterson were jointly charged with discharging a firearm at an occupied motor vehicle (Pen. Code,[2] § 246; count 1), attempting to murder Walker, Townsend, and Curry (§§ 187, subd. (a), 664; counts 2-4, respectively), and assaulting Walker, Townsend, and Curry with a firearm (§ 245, subd. (a)(2); counts 5-7, respectively). Various firearm enhancement allegations were appended to some of the charges. (§§ 12022.5, subd. (a), 12022.53, subds. (b), (c), (d), (e)(1).)

On July 3, 2012, defendant pled no contest to one count of attempted second degree murder in which Curry, Walker, and Townsend were all named as victims. In return for his plea, the remaining counts and allegations were dismissed.

According to the probation officer's report, investigation at the scene of the shooting revealed that a black Dodge Durango parked in the driveway just north of the crime scene had a small dent in the right rear quarter panel that appeared to be a fresh impact point from a bullet. The vehicle also had a mark on, and paint chipped off, the quarter panel. Pauline McDowell, who lived at the address at which the vehicle was parked, reported she had heard the shooting, and her vehicle did not have the mark before the incident. She requested restitution in the amount of $350 for the damage to her vehicle, and submitted a receipt for that amount. The probation officer's report recommended defendant pay restitution in that amount to McDowell, and that said restitution be made joint and several.

Sentencing took place on August 6, 2012. Defense counsel objected to Townsend's request for relocation expenses, and asked for a hearing thereon. No mention was made of McDowell's request by either party. The trial court sentenced defendant to nine years in prison and, insofar as is pertinent to this appeal, originally reserved restitution to all victims pending a restitution hearing. When the probation

---

[2]     All statutory references are to the Penal Code.

officer pointed out that McDowell submitted a receipt for the $350 she requested, the court asked defense counsel if there was any objection to that restitution. Counsel replied, "That is submitted." The court then ordered defendant to pay $350 in restitution to McDowell.

## DISCUSSION

The sole issue on appeal concerns the validity of the restitution award to McDowell. Subdivision (a)(1) of section 1202.4 provides: "It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." To this end, subdivision (f) of the statute provides, with exceptions not pertinent here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim … in an amount established by court order, based on the amount of loss claimed by the victim .… The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record."

Defendant contends the restitution award to McDowell cannot stand because her loss did not stem from conduct for which defendant was convicted. He reasons that McDowell's loss stemmed from vandalism to her vehicle; defendant was never charged with or convicted of any sort of vandalism; when he entered his plea, he admitted only that he tried to kill Walker, Curry, and Townsend, not that he damaged the car of a third party in the process of committing his crime; and the preliminary hearing transcript, which constituted the factual basis for the plea, made no mention of damage to McDowell's vehicle. Defendant further says he was never on notice, when he entered his no contest plea, that his liability would extend to McDowell's vehicle.[3]

---

[3] Defendant also says that if, by submitting the matter instead of objecting, defense counsel forfeited the right to contest the restitution award on appeal, then defendant received ineffective assistance of counsel. The Attorney General does not assert

4.

"We review the trial court's allocation of responsibility for restitution for an abuse of discretion, mindful that an order resting on a demonstrable legal error constitutes such an abuse.  [Citation.]"  (*People v. Hume* (2011) 196 Cal.App.4th 990, 995; see *People v. Giordano* (2007) 42 Cal.4th 644, 663, fn. 7 ["we review all restitution orders for abuse of discretion"].)  A victim's restitution right and, hence, section 1202.4, are to be broadly and liberally construed.  (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231; *People v. Baker* (2005) 126 Cal.App.4th 463, 467.)

The intent of the enactors of section 1202.4 is plain:  Every victim who suffers a loss has the right to restitution """"from those convicted of the crime giving rise to that loss.'  [Citation.]  …  [A] trial court may compensate a victim for any economic loss which is proved to be the direct result of the defendant's criminal behavior .…"  [Citation.]'  [Citation.]  'The only limitation the Legislature placed on victim restitution is that the loss must be an "economic loss incurred as the result of the defendant's criminal conduct."  [Citations.]'  [Citation.]"  (*People v. Moore*, *supra*, 177 Cal.App.4th at pp. 1231-1232, fn. omitted.)

In interpreting the requirement that the victim's economic loss be the result of the defendant's criminal conduct, *People v. Holmberg* (2011) 195 Cal.App.4th 1310 (*Holmberg*) is instructive.  In that case, the defendant was convicted by plea of concealing stolen property and using an altered, stolen, or counterfeit access card.  He was ordered to pay more than $18,000 in victim restitution, an award he claimed was

forfeiture and, because defendant's challenge is not to the amount of restitution ordered but rather involves the interpretation of section 1202.4 and whether McDowell constituted a victim of defendant's crime under that statute, we would not find forfeiture in any event.  (Compare *People v. Anderson* (2010) 50 Cal.4th 19, 26 with *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.)  Since we address defendant's challenge to the restitution award on the merits, we do not reach his claim of ineffective assistance of counsel.  Were we to reach the claim, we would reject it.

improper because the victims' damages were due to the burglary of the victims' premises and not his conduct. (*Id*. at p. 1313.) In disagreeing, the appellate court stated:

> "Interpreting the requirement that the damages result from the defendant's criminal conduct, the court in *People v. Jones* (2010) 187 Cal.App.4th 418, 424-427 (*Jones*) held that tort principles of causation apply to victim restitution claims in criminal cases. The court observed that there 'are two aspects of causation …: cause in fact (also called direct or actual causation), and proximate cause.' [Citation.] The court explained that '"[a]n act is a cause in fact if it is a necessary antecedent of an event"' and that '"proximate cause 'is ordinarily concerned, not with the fact of causation, but with the various considerations of policy that limit an actor's responsibility for the consequences of his conduct.'"' [Citation.] [¶] … [¶]

> "'"The first element of legal cause is *cause in fact*.… The 'but for' rule has traditionally been applied to determine cause in fact…. [¶] The Restatement formula uses the term *substantial factor* 'to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause.'"' [Citation.]

> "Defendant correctly notes that California courts have adopted the 'substantial factor' test in analyzing proximate cause. [Citation.] '"The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." [Citation.] Thus, "a force which plays only an 'infinitesimal' or 'theoretical' part in bringing about injury, damage, or loss is not a substantial factor" [citation], but a very minor force that does cause harm is a substantial factor [citation]. This rule honors the principle of comparative fault.' [Citation.]

> "Defendant argues that the restitution award here was improper because his conduct was not a substantial factor in causing the victims' damages. He argues that the victims' losses would have occurred even without his act and that the damages were due to the burglaries rather than his concealing the property. Defendant's argument, however, ignores the fact that there can be more than one cause of injury and that multiple causes can combine to cause harm. [Citations.]

> "Although defendant denies burglarizing the victims' premises, the evidence here supports the conclusion that defendant's conduct was a concurrent cause of the victims' losses and a substantial factor in depriving them of the use of their property.… Defendant's conduct played far more than a negligible or theoretical part in bringing about the victims' injuries

6.

and was a substantial factor in causing the harm they suffered." (*Holmberg*, *supra*, 195 Cal.App.4th at pp. 1321-1322.)

Defendant says *Jones* is distinguishable because the defendant in that case received a grant of probation and the hit-and-run charge that resulted in the actual property damage was dismissed with a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).[4] Here, by contrast, defendant was sentenced to prison.

It is true that a trial court's discretion to award restitution is broader when restitution is imposed as a condition of probation than when the defendant is sentenced to prison. (*People v. Giordano, supra,* 42 Cal.4th at p. 663, fn. 7.) "Probationary restitution may be imposed even if a defendant has not been convicted for a particular offense .…" (*Ibid.*) This does not mean, however, that the principles of causation explained in *Jones* have no application when a prison sentence is involved, or that defendant could not be ordered to pay restitution to McDowell unless he was convicted of vandalism or some other crime committed directly against her property interests. Indeed, the defendant in *Holmberg* was sentenced to prison. (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1313.)

By his no contest plea, defendant admitted attempting to murder all three people in the Malibu. McDowell's vehicle was damaged by one of the shots fired in the commission of that crime. Under the facts established by the preliminary hearing transcript, defendant either fired the shot directly or aided and abetted its firing. (Cf. *People v. Woods* (2008) 161 Cal.App.4th 1045, 1049-1050, 1052 [defendant sentenced to prison as accessory to murder could not be ordered to pay victim restitution for economic loss stemming from said murder; loss did not arise out of criminal activity forming basis of conviction because charge of accessory was based on conduct occurring only after loss was sustained, and defendant was not convicted as coconspirator or aider and abettor of

---

**4** *Harvey* holds that for purposes of sentence enhancement, a court may not consider facts that pertain solely to a charge dismissed as part of a plea bargain. (*Harvey*, *supra*, 25 Cal.3d at pp. 758-759.)

the murder itself]; *People v. Leon* (2004) 124 Cal.App.4th 620, 621, 622 [defendant sentenced to prison could not be ordered to pay restitution for loss resulting from second defendant's crime where record did not suggest defendant aided and abetted commission of second defendant's crime].) Under the circumstances, defendant's conduct was at least a concurrent cause of McDowell's loss and substantial factor in the economic injury she incurred. Restitution was not imposed based on a crime for which defendant was not convicted; rather, restitution was imposed because the loss was "a result of the defendant's conduct" (§ 1202.4, subd. (f)), specifically, the crime to which he pled no contest. Because his conduct "played far more than a negligible or theoretical part in bringing about [McDowell's] injuries and was a substantial factor in causing the harm [she] suffered" (*Holmberg*, *supra*, 195 Cal.App.4th at p. 1322), the trial court did not abuse its discretion by ordering defendant to pay McDowell restitution for the damage to her vehicle (see *id*. at p. 1324).

*People v. Lai* (2006) 138 Cal.App.4th 1227 (*Lai*), on which defendant relies, does not assist him. In that case, the defendant was convicted of fraudulently obtaining aid in the amount of $232,313.57 between January 1, 1985, and February 29, 2000. At sentencing, the prosecution sought $261,543.57 in restitution, comprising (1) the jury's finding of $232,313.57; (2) an additional $18,000 in fraudulently obtained aid that was shown by evidence at trial to be attributable to the charged crimes; and (3) $11,230 in fraudulently obtained aid shown by evidence at trial, but occurring from September 1980 to March 1983, before the crimes of which the defendant was convicted. The trial court ordered the defendant to pay the amount of restitution requested by the prosecution. (*Id*. at p. 1246.)

On appeal, the court held the defendant could not be required to pay the $11,230 attributable to aid fraudulently obtained before the charged period: Because the defendant was sentenced to prison, as opposed to being placed on probation, section 1202.4 limited restitution "to losses caused by the criminal conduct for which the

8.

defendant was convicted." (*Lai*, *supra*, 138 Cal.App.4th at p. 1246.)  Construing article I, section 28, former subdivision (b) (now subd. (b)(13)(A)) of the California Constitution together with section 1202.4, the court determined the language of the Constitution "grants the right to receive restitution for losses resulting from the crime of which the defendant was convicted.  Implementing that right, section 1202.4 requires a defendant to pay restitution for losses resulting from the *criminal conduct* supporting the crimes of which the defendant was convicted." (*Lai*, *supra*, at p. 1247, italics added.)  It concluded:  "[W]hen a defendant is sentenced to state prison, section 1202.4 limits restitution to losses caused by the *criminal conduct* for which the defendant was convicted.  Therefore, section 1202.4 does not support that portion of the restitution order … attributable to fraudulently obtained aid before the charged period." (*Id*. at p. 1249, italics added.)

In *Lai*, the defendant's conduct in fraudulently obtaining aid during the charged period had no causal relationship to his fraudulently obtaining aid before that period.  The losses accruing before the charged period were not caused by the defendant's criminal conduct supporting his conviction.  Here, by contrast, the damage to McDowell's car directly resulted from the criminal conduct supporting the crime to which defendant pled, and of which the preliminary hearing transcript established the factual basis.[5]

Defendant argues, however, that upholding the restitution award to McDowell would undermine his constitutional right to notice.  "[T]he central meaning of procedural

---

[5]    Defendant's citation to *People v. French* (2008) 43 Cal.4th 36, 50-51 is unavailing.  The issue in that case was whether, and if so, under what circumstances, a factual basis for a plea could be used to establish an aggravating sentencing factor without violating a defendant's Sixth Amendment jury trial right as set out in *Cunningham v. California* (2007) 549 U.S. 270.  (*French*, *supra*, at p. 40.)  A criminal defendant's constitutional right to a jury trial is not implicated by victim restitution.  (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1184 & cases cited; see also *People v. Holman* (2013) 214 Cal.App.4th 1438, 1451-1452.)

due process [is] clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.' [Citations.]" (*Fuentes v. Shevin* (1972) 407 U.S. 67, 80.) At the change of plea hearing, defendant was notified that if "the victim suffered any financial loss as a result of [defendant's] actions," defendant would have to pay the victim actual restitution. The circumstances surrounding the damage to McDowell's vehicle were clearly set out in the probation officer's report, and payment of restitution to her expressly recommended. This constituted sufficient notice. (*People v. Harvest* (2000) 84 Cal.App.4th 641, 653; compare *People v. Collins* (2003) 111 Cal.App.4th 726, 734 with *People v. Sandoval* (1989) 206 Cal.App.3d 1544, 1550.) If defendant believed he did not fully understand the scope of his liability when he entered into the plea bargain, as he now suggests, his remedy was to move to withdraw the plea on that ground. He did not do so.

## DISPOSITION

The judgment is affirmed.